**Rosetta HEASTIE, Plaintiff,**

v.

**COMMUNITY BANK OF GREATER PEORIA; Community Financial Services, Inc.; and U.S. Satellite Systems, Inc., Defendants.**

No. 88 C 0358.

United States District Court,
N.D. Illinois, E.D.

Sept. 7, 1989.

Daniel A. Edeman, Chicago, Ill., for plaintiff.

Peter B. Carey, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The two remaining defendants, Community Bank of Greater Peoria and Community Financial Services, Inc. (collectively, "Community Bank"), originally moved to dismiss Count III of the complaint for failure to state a claim upon which relief could be granted. In response, the plaintiff Rosetta Heastie moved for summary judgment on liability for Count III. However, Mrs. Heastie also moved to certify her claim as a class action, and we were required to consider that motion first. In an opinion dated May 22, 1989, we granted the motion for class certification. 125 F.R.D. 669 (N.D.Ill.1989). After we did so, Mrs. Heastie amended her complaint, but the amended complaint did not materially change Count III. Therefore, the motion to dismiss and the motion for summary

judgment remain for our decision. For the reasons set forth below, we treat Community Bank's motion to dismiss as a motion for summary judgment and deny it. We grant Mrs. Heastie's motion for summary judgment on the issue of liability.

## Procedural Background

■ In their briefs on Community Bank's motion to dismiss, both sides cited to facts outside the face of the complaint. In its reply brief, Community Bank objected to Mrs. Heastie's use of such facts, even though it had itself gone outside of the complaint in its memorandum in support. Despite Community Bank's objections, we conclude that it is appropriate to treat the motion to dismiss as a motion for summary judgment, as permitted by Rule 12(b). Both sides agree on the material facts improperly raised in briefing the motion to dismiss, namely, the cash sales contract between U.S. Satellite and Mrs. Heastie and the promissory note between Mrs. Heastie and Community Bank. (We discuss these two documents below.) As might be expected, however, they disagree on the legal consequences of those facts.

## Factual Background

The parties agree that in late 1985, Leonard Kraman, a representative of U.S. Satellite Systems, Inc., convinced Mrs. Heastie to buy a satellite dish antenna for her home on the south side of Chicago. On December 4, 1985, Mrs. Heastie signed a cash sales contract with U.S. Satellite, setting a purchase price of $4,000. *See* Exh. A, Def's Motion to Dismiss Count III. Mrs. Heastie did not have $4,000, so Kraman told Mrs. Heastie that U.S. Satellite would find financing for her. It did not have to look far; it had previously entered into an agreement with Community Bank in which Community Bank agreed to provide credit for approved U.S. Satellite customers. *See* Exh. E, Pltf's Statement of Material Facts. Under the terms of the agreement, Community Bank agreed to provide U.S. Satellite with loan application forms, which U.S. Satellite would in turn provide to those consumers "who inquire[d] as to the availability of a loan to finance their prospective

purchase." *Id.* ¶ 1. Community Bank would then review the application, *id.* ¶ 2, and if it approved the loan, it could, if it chose, forward the documents to U.S. Satellite to obtain the consumer's signature, *id.* ¶ 3. Once it received the executed documents, U.S. Satellite would return them to Community Bank. *Id.* ¶ 4.

It is not clear whether Mrs. Heastie filled out an application for a loan, but on December 19, 1985, she received a promissory note and a "Completion Certificate," both prepared by Community Bank. *See* Exhs. C & D, Pltf's Response to Def's Motion to Dismiss.[1] As required by 16 C.F.R. part 433 (1988) ("part 433"), a Federal Trade Commission ("FTC") regulation that we discuss at length below, the promissory note included the following notice:

> Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained with the proceeds thereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

However, the completion certificate included the following at least somewhat contradictory provision, which we shall refer to as the non-responsibility provision:

> In accordance with my (our) credit application dated December 19, 1985.
>
> I (We) understand that the selection of the dealer and the acceptance of the materials used and the work performed is my (our) responsibility and that the financial institution does not guarantee the material or workmanship or inspect the work performed.

Mrs. Heastie signed both documents, and the loan proceeds were used to pay U.S. Satellite. She believes, and we agree, that the facts we have already described are sufficient to impose liability; accordingly, she does not document anything more. However, because it is helpful to place these facts in context, we will set out some of the allegations of her complaint. We will not rely on these allegations in our decision here.

After Mrs. Heastie signed the loan documents, U.S. Satellite installed the dish. The dish, however, proved to be defective, and even worse, the U.S. Satellite workers damaged Mrs. Heastie's roof while installing it. Accordingly, Mrs. Heastie, after making some payments, notified Community Bank that she refused to make further payments for the defective dish. According to Mrs. Heastie, Community Bank insisted that she pay and threatened to foreclose on her home if she did not refinance her arrearage. Community Bank specifically denies this.

### Statutory and Regulatory Background

Mrs. Heastie contends that Community Bank's use of the non-responsibility provision sidestepped the FTC promulgated part 433 and that it therefore violated section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), Ill.Rev.Stat. ch. 121½, para. 262 (1987). Section 2 declares unlawful, among other things, any "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact...." Such acts are unlawful whether or not anyone has actually been "misled, deceived or damaged thereby," *see id.*, but only someone who has "suffer[ed] damage as a result of a violation of this Act" may bring a private civil action under the Act. *Id.* para. 270a(a).

Section 2 also provides that "[i]n construing this section[,] consideration shall be given to the interpretation of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal

---

1. Although Mrs. Heastie has not precisely documented the point, we may assume that these documents were presented to her by U.S. Satellite; given the agreement between U.S. Satellite and Community Bank and the distance between Mrs. Heastie's home in Chicago and Community Bank's offices in Peoria, a reasonable jury could not conclude otherwise.

Trade Commission Act [15 U.S.C. § 45(a)]." Section 5(a), which is at least partially the model for the Consumer Fraud Act's section 2, provides in part that "unfair or deceptive acts or practices in or affecting commerce ... are declared unlawful." 15 U.S.C. § 45(a)(1). Unlike the Consumer Fraud Act, the FTC Act does not provide for private civil actions, but only for enforcement by the FTC. Pursuant to these enforcement powers, the FTC has promulgated a number of rules identifying specific unfair or deceptive acts or practices. These rules include what we have called part 433, more fully referred to as 16 C.F.R. part 433 (1988) "Preservation of Consumers' Claims and Defenses." It is this rule that is at the heart of the motions currently before us.

As its title suggests, part 433's aim is to preserve the claims and defenses of consumers when their major purchases go sour.[2] The FTC found that all too often, a consumer would enter into a loan to finance the purchase of goods or services, only to discover that the goods turned out to be defective, or that the services, if performed at all, were done in a shoddy manner. The consumer, quite naturally, believed it unfair to continue to pay for something that he had not received. Yet, if he made further inquiry, or if he attempted to discontinue payments, he might well find that his obligation to pay remained, even though the seller had failed in his obligation to perform. This would happen in essentially two types of cases. In the first, the consumer entered into a loan with the seller and signed a promissory note, which the seller could then negotiate to a financing institution. Under the operation of the Holder in Due Course Rule of the Uniform Commercial Code, the financing institution would take the note free of most defenses, as long as certain conditions were met. See U.C.C. § 3–305. Thus, if the financing institution sued on the note, the consumer would be unable to raise the seller's failure to perform as a defense.[3]

In the second situation, which is the one that is at issue here, the seller arranges a direct loan for the consumer from the lender.[4] Because the seller is never formally part of this loan, the seller's actions cannot provide a defense, and this is so even if all parties contemplated that the loan would go to pay the seller and even if the seller had a referral relationship with the lender. Of course, in both situations, the consumer could in theory bring an action against the seller, but that is cold comfort indeed when the seller has skipped town or otherwise gone out of business.

Part 433 is the FTC's attempt to curb these abuses. The FTC aimed to eliminate the "inequities of the present system" by placing "a greater responsibility ... upon the financial institutions to police the merchants with whom they deal." Statement of Basis and Purpose, 40 Fed.Reg. 53,506, 53,520 (1975). Yet, part 433 pursues this goal in a rather roundabout way. The rule has two basic requirements, which correspond to the two scenarios described above. Under the first requirement, the seller who makes a loan to a consumer must include a notice in the consumer credit contract that any holder of the contract is subject to the claims and defenses which the consumer could assert against the seller. 16 C.F.R. § 433.2(a).[5] The second requirement is similar, but deals with the seller who refers consumers or is affiliated with a lender.

---

**2.** Our discussion here is based largely on the Statement of Basis and Purpose that the FTC issued to accompany part 433. See 40 Fed.Reg. 53,506 (1975).

**3.** There is a variant on this scenario, where the seller incorporates a "waiver of defenses" in an installment sales agreement, and then assigns the agreement to the financing institution. Once again, the waiver would act to cut off the consumer's defenses.

**4.** This method is sometimes referred to as "bodydragging," because the seller drags the consumer to the lender's office.

**5.** The required notice, to be printed in at least ten-point bold face type, reads as follows:

Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

This provision makes it an unfair or deceptive practice for such a seller to accept the proceeds from a loan unless the consumer credit contract includes a notice that any holder of the contract is subject to the claims and defenses that the consumer could assert against the seller. *Id.* § 433.2(b).[6]

It will be noted that part 433 puts the burden on the seller, either to include the required notice or not to accept loan proceeds if the notice is not included. This seems somewhat strange, since the consumer's problems often arise from unscrupulous sellers. If the required notice is included in the consumer loan contract, the consumer is protected.

> But should the seller for any reason omit the Notice clause, whether through simple lack of knowledge, oversight, uncertainty as to whether it need comply or fear of not finding a creditor willing to assume the risk, the buyers lose the Notice's qualified protection. The buyer is consequently left totally dependent for relief on the applicable state statutes and case law in his jurisdiction, which can range from full consumer protection to no protection at all.

Comment, *The FTC's Holder-in-Due-Course Rule: An Ineffective Means of Achieving Optimality in the Consumer Credit Market*, 25 UCLA L.Rev. 821, 854 (1978).

The FTC apparently recognized the shortcoming in part 433, because the same day it officially promulgated the rule, it proposed an amendment that would have made it an unfair or deceptive practice for either the seller or the lender to take or receive the credit contract without the required notice. 40 Fed.Reg. 53,530 (1975). In September 1979, the FTC approved the revised rule in substance, *see* 44 Fed.Reg.

65,771 (1979), and in November of that same year, it requested comments on certain changes in language. *See id.* However, for reasons that are unclear, the FTC never promulgated the proposed rule, and part 433 remains on the books essentially unchanged from its original version.

Analysis

■ As already discussed, Community Bank agreed to provide credit for approved U.S. Satellite customers. By this agreement, U.S. Satellite agreed to give loan applications to those who inquired about loans or, in other words, agreed to refer consumers to Community Bank. Thus, the requirements of part 433 applied, and U.S. Satellite could not accept the proceeds of a purchase money loan from Community Bank unless the consumer credit contract included the required notice.

■ The promissory note between Mrs. Heastie and Community Bank did contain the required notice,[7] and presumably, U.S. Satellite did not violate the FTC regulation by accepting proceeds under this note. However, the completion certificate also contained the non-responsibility provision, which essentially contradicted the FTC-required notice. Specifically, while the notice required by part 433 stated that Community Bank, as holder of the note, was subject to any defenses Mrs. Heastie had against U.S. Satellite, the non-responsibility clause stated that Community Bank was not responsible for the actions of U.S. Satellite. Put another way, while the part 433 notice said that Mrs. Heastie could look to Community Bank if something went wrong, the non-responsibility provision said to look elsewhere. According to Mrs. Heastie, the use of the non-responsibility provision therefore violates the Illinois Consumer Fraud Act by sidestepping the requirements of part 433.

---

**6.** The required notice reads as follows:

Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

**7.** The notice was printed in less than ten-point type, but Mrs. Heastie does not argue that this relatively minor violation of part 433 affects liability under the Illinois Consumer Fraud Act.

Community Bank disagrees. It relies heavily on the fact that part 433 does not apply to lenders but only to sellers of goods and services, and on the FTC's failure to amend the regulation to apply to lenders. In Community Bank's view, even if the non-responsibility clause is a way of getting around part 433, Community Bank cannot be liable because part 433 does not apply to it.

■ It is true, as we explained above, that part 433 does not apply by its terms to lenders. However, Count III is not brought—indeed, it could not be brought—directly under part 433. Rather, it is brought under the Illinois Consumer Fraud Act, and we conclude that that Act casts a wider net than part 433. The Illinois General Assembly has specifically stated that the Consumer Fraud Act "shall be liberally construed to effect the purposes thereof." Section 11a, Ill.Rev.Stat. ch. 121½, para. 271a (1987). Moreover, the Illinois Supreme Court recognized that the terms which the legislature used in the Act were intentionally broad.

> The terms "unfair practice" and "unfair methods of competition" are inherently insusceptible of precise definition. As we noted when the issue of the vagueness of section 2 was first before us, effective regulation requires that the concept be flexible, defined on a case-by-case basis "in view of the futility of attempting to anticipate and enumerate all the unfair methods" and practices that fertile minds might devise.

*Scott v. Association for Childbirth at Home, International*, 88 Ill.2d 279, 290, 58 Ill.Dec. 761, 767, 430 N.E.2d 1012, 1018 (1981) (quoting *Fitzgerald v. Chicago Title & Trust Co.*, 72 Ill.2d 179, 185–86, 20 Ill. Dec. 581, 585, 380 N.E.2d 790, 794 (1978)).

■ To be sure, the Consumer Fraud Act directs the courts to give consideration to the FTC's interpretation of the Act when determining whether an act or practice is unfair or deceptive. It might therefore be argued that because the FTC has not seen fit to draft or amend part 433 so that it will apply to lenders, the Consumer Fraud Act does not reach lenders in this situation either. However, in determining whether a practice is unfair or deceptive, the Illinois courts do not look only at the particular practices that the FTC has identified as unfair or deceptive; they also look more broadly at the standard the FTC employs in deciding what is an unfair or deceptive practice. This standard has three parts:

> (1) whether the practice offends public policy as established by statutes, the common law, or otherwise, or is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether the practice is immoral, unethical, oppressive, or unscrupulous; and (3) whether the practice causes substantial injury to consumers or competitors.

*People ex rel Hartigan v. All American Aluminum & Construction Co.*, 171 Ill. App.3d 27, 121 Ill.Dec. 19, 23, 524 N.E.2d 1067, 1071 (1st Dist.1988) (citing *Federal Trade Commission v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n. 5, 92 S.Ct. 898, 905 n. 5, 31 L.Ed.2d 170 (1972)); *see also People ex rel. Fahner v. Walsh*, 122 Ill.App.3d 481, 484, 77 Ill.Dec. 691, 694, 461 N.E.2d 78, 81 (2d Dist.1984); *People ex rel. Fahner v. Hedrich*, 108 Ill.App.3d 83, 89, 63 Ill.Dec. 782, 786, 438 N.E.2d 924, 928 (2d Dist.1982); *Perrin v. Pioneer National Title Insurance Co.*, 83 Ill.App.3d 664, 671, 39 Ill.Dec. 124, 129, 404 N.E.2d 508, 513 (1st Dist.1980).

Applying these criteria here, we conclude that Community Bank's use of the non-responsibility clause violates the Consumer Fraud Act. First, the FTC has concluded that "the mechanical abrogation of consumer claims and defenses is unfair" and that consequently "a consumer's duty to pay for services must not be separated from a seller's duty to perform as promised." Statement of Basis and Purpose, 40 Fed.Reg. 53,506, 53,523 (1975). The non-responsibility provision, if given effect, would separate the duty to pay from the duty to perform; its use, therefore, is at the very least

"within ... the penumbra of some ... established concept of unfairness." Likewise, the provision, if given effect, is oppressive in the sense that it places the burden of non-performance by the seller on the consumer, rather than on the lender, where the FTC attempted to place it by promulgating part 433. Finally, the non-responsibility provision substantially insures consumers by taking away the legal protection provided by the notice requirements of part 433.

■ Community Bank argues, however, that summary judgment in Mrs. Heastie's favor is nonetheless inappropriate, because there is a genuine issue regarding its intent in using the non-responsibility provision. According to Community Bank, it used the completion certificate containing the offending non-responsibility provision to determine, before distributing the loan proceeds, whether the consumer borrower had received what he had bargained for. The completion certification indicated that it was to be signed after installation, and it might be questioned if a consumer would know whether he had received what he had bargained for at that time; it would seem that products might well prove defective sometime after installation. Nonetheless, the evidence that Community Bank presents does raise a genuine issue of fact regarding its intent, and if intent were a material fact, summary judgment would not be appropriate. But intent is not a

material fact under the Consumer Fraud Act. "[A] violator's good or bad faith is not important." *Warren v. LeMay*, 142 Ill.App.3d 550, 566, 96 Ill.Dec. 418, 428, 491 N.E.2d 464, 474 (5th Dist.1986); *see also Duhl v. Nash Realty, Inc.*, 102 Ill.App.3d 483, 495, 57 Ill.Dec. 904, 914, 429 N.E.2d 1267, 1277 (1st Dist.1981). "[T]he center of focus ... is not on the intent of the seller [or, in this case, the lender] but, rather, on the effect that the unlawful conduct might have on the consumer." *People ex rel. Hartigan v. Stianos*, 131 Ill.App.3d 575, 579, 86 Ill.Dec. 645, 648, 475 N.E.2d 1024, 1027 (2d Dist.1985); *see also Graphic Sales, Inc. v. Sperry Univac Division Sperry Corp.*, 824 F.2d 576, 580 n. 3 (7th Cir.1987); *American Buyers Club of Mt. Vernon v. Honecker*, 46 Ill.App.3d 252, 259, 5 Ill.Dec. 666, 671, 361 N.E.2d 1370, 1375 (5th Dist.1977). The effect of the non-responsibility provision would be to take away the protection provided by part 433's notice requirement. This is enough to give rise to a violation of the Illinois Consumer Fraud Act.[8]

### Class Aspects

For the reasons we have set forth above, summary judgment is appropriate on the issue of liability, but only for a portion of the class. As set out in our previous decision, the class for Count III is defined as those persons (a) who were referred to Community Bank by a provider of goods or

---

8. *Vietnam Veterans of America, Inc. v. Guerdon Industries, Inc.*, 644 F.Supp. 951 (D.Del.1986), relied on by Community Bank, does not require a contrary result. In *Guerdon*, the plaintiffs alleged that certain lenders held consumer credit contracts in circumstances that brought part 433 into play. However, they did not allege that the contracts contained the required notices, and in the Court's view, this was a fatal pleading flaw. According to the Court, any consumer rights under part 433's notice provision come into existence only when the provision is included in the consumer credit contract. Since the plaintiffs failed to allege that the part 433 provision was included in the contract, they failed to state a claim under either the Racketeer Influenced and Corrupt Organizations Act ("RICO") or the Truth in Lending Act ("TILA"). *Id.* at 964–65. In a footnote, the Court went on to

suggest that the plaintiffs would not have stated a RICO or TILA claim, even if they had alleged that the contracts had included the provision required by part 433. *Id.* at 965 n. 10.

Mrs. Heastie's case differs from *Guerdon* in two important respects. First, Count III of her complaint is brought under the broad Illinois Consumer Fraud Act rather than under the RICO or TILA, which are at least somewhat narrower and have a different focus. Second, the evidence here shows that the consumer credit contract did include the notice provision required by part 433. Thus, even accepting the *Guerdon* Court's view that the part 433 provision creates rights only if included in the consumer credit contract—a matter that we do decide here—consumer rights were created by the inclusion of the required provision.

services; (b) who obtained a loan from Community Bank, the proceeds of which were used to pay for the goods or services, and (c) who signed a document from Community Bank in which they purported to agree that "I (We) understand that the selection of the dealer and the acceptance of the materials used and the work performed is my (our) responsibility and that the financial institution does not guarantee the material or workmanship or inspect the work performed." Mrs. Heastie has relied on the agreement between U.S. Satellite and Community Bank to establish a referral relation between the two. Such a referral relation is necessary to bring part 433 into play. *See* 16 C.F.R. § 433. Thus, Mrs. Heastie has established liability for those members of the class that dealt with U.S. Satellite. However, she also alleges that Community Bank had referral relationships with other sellers of goods and services, but as of yet, she has provided no evidence to support this claim. Therefore, Mrs. Heastie has not established liability for those members of the class that dealt with sellers other than U.S. Satellite.

We will allow Mrs. Heastie until September 20, 1989, to file a Local Rule 12(*l*) statement concerning these other sellers, and Community Bank until October 2, 1989, to file a Local Rule 12(m) statement in response.

### Conclusion

For the reasons set forth above, Community Bank's motion to dismiss Count III, treated as a motion for summary judgment, is denied. Mrs. Heastie's motion for summary judgment on the issue of liability under Count III is granted, but only for those members of the class that purchased goods and services through U.S. Satellite. Mrs. Heastie is given until September 20, 1989, to file a Local Rule 12(*l*) statement regarding liability to members of the class that purchased goods or services from other sellers. Community Bank is given until October 2, 1989, to file a Local Rule 12(m) statement in response. The status hearing set for September 8, 1989, is stricken and

reset for October 20, 1989, at 10:30 a.m. It is so ordered.