Cathie ARNOLD, Debtor–Appellant,

v.

FIRST CREDIT CORPORATION, Appellee.

Nos. 92 C 7787, 91 B 12375.

United States District Court, N.D. Illinois, E.D.

Feb. 26, 1993.

Robert J. Adams, Robert J. Adams & Associates, P.C., Chicago, IL, for Cathie Arnold, appellant.

Barry M. Fisher, Fisher & Fisher, P.C., Wade R. Joyner, Crowley, Barrett & Karaba, Ltd., Chicago, IL, for First Credit Corp., appellee.

Jerome A. Vinkler, Connelly, Mustes, Palmer & Schroeder, Geneva, IL, for Budget Construction Co., Inc. and Donald Schneider, appellees.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter comes before the Court on an appeal from the United States Bankruptcy Court for the Northern District of Illinois, 147 B.R. 435. For the reasons set forth below, we affirm the decision of the bankruptcy court.

### FACTUAL BACKGROUND

Appellant Cathie Arnold ("Arnold") appeals to this Court to reverse the bankruptcy court's grant of summary judgment against her, and for the appellee, First Credit Corporation ("First Credit"). We review the decision of the bankruptcy court on a *de novo* basis. *In re Schipper*, 112 B.R. 917, 918 (N.D.Ill.1990).

Arnold is the owner of two small apartment buildings on the same plot in Chicago ("the Premises"). Combined, the two buildings contain five apartments. Arnold lives in one apartment and rents out the remaining four.

In early 1990, Arnold decided to make various repairs and improvements to the Premises. She contracted with Budget Construction Company ("Budget") to perform certain work on the Premises. Arnold entered an installment contract with Budget, which she concedes was for business, not consumer purposes. The installment contract contained the following language ("the FTC holder language"):

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT THEREON OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER (emphasis in original).

The contract also included a provision whereby the buyer, Arnold, promised to sign a certificate when the seller, Budget, finished the work described in the contract.

After entering into the agreement with Budget, Arnold signed a document giving First Credit a mortgage on the Premises for purpose of securing the payment of debt under the contract. The mortgage stated that the contract either had or would be assigned to First Credit.

During the month of February 1990, Budget worked on the Premises. At several points during the construction, Arnold complained about Budget's quality of work. Specifically, Arnold complained about the existence of a leak from the third floor to the second floor and about Budget's failure to install the right type of windows and the right type of flooring in one of the kitchens.

On February 22, 1990, Budget asked Arnold to execute a completion certificate that read as follows:

By signing this certificate, you certify that:

The Contractor has completed the work he or she agreed to do to your satisfaction. You confirm that you have no defenses or offsets to, or which might impair, the Retail Installment Obligation. . . .

**DON'T SIGN THIS CERTIFICATE UNLESS THE CONTRACTOR HAS FINISHED THE IMPROVEMENTS HE OR SHE AGREED TO MAKE TO YOUR SATISFACTION** (emphasis in original).

Arnold signed the completion certificate.

In addition to signing the completion certificate, Arnold confirmed on the telephone to First Credit that the repair work by Budget had been completed to her satisfaction.

In reliance on the completion certificate and on Arnold's oral confirmation that the repairs were complete, First Credit purchased the installment contract from Budget.

It is undisputed that at the time Arnold made these representations, she was not satisfied with the work performed by Budget. Arnold, however, contends that she did not know that First Credit was relying on her statements about the work being completed in making its decision to loan her the money to pay Budget.

In addition to the complaints registered with Budget about the leak, the windows, and the flooring, Arnold now complains about many other defective repairs Budget made to the Premises. These include the following: a lopsided toilet, inadequate plaster work, poor installation of tile in several rooms, and a failure to reset the wood in a hallway after plastering.

Arnold failed to make payments to First Credit due under the installment contract, and on February 19, 1991, First Credit obtained a default judgment of foreclosure on the contract. Arnold filed a petition under Chapter 13 of the Bankruptcy Code on June 10, 1991. Shortly thereafter, Arnold filed an adversary complaint against Budget and First Credit seeking to determine the extent of First Credit's lien against her real property.

Arnold argues in her complaint that Budget is liable for breach of contract, breach of warranty, failure to comply with the Truth in Lending Act ("TILA") Notice to Cancel provision, and statutory and common-law fraud. Furthermore, she claims that First Credit is not a holder in due course and is therefore subject to all claims and defenses arising from Budget's wrongdoing.

First Credit, in turn, filed a motion for summary judgment claiming that (1) Arnold was not a consumer, and thus, was not entitled to protection under TILA; (2) First Credit was a holder in due course, and therefore took free and clear of Arnold's

claims and defenses; and finally, (3) that Arnold was estopped from asserting her claims against First Credit. In her response to the summary judgment motion, Arnold conceded that she was not a consumer capable of obtaining protection under TILA. Thus, the bankruptcy court was presented with the two remaining issues, whether First Credit was a holder in due course and whether Arnold was estopped from asserting her claims against First Credit.

The bankruptcy court found that it did not need to reach the issue of whether First Credit was a holder in due course because it determined that as a matter of law Arnold was estopped from asserting her claims against First Credit. We agree with the bankruptcy court that Arnold is estopped from asserting her claims against First Credit, and accordingly, we affirm its judgment.

**LEGAL STANDARD**

■ Summary judgment is appropriate if the pleadings, answers to interrogatories, admissions, affidavits and other materials show "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue exists, and summary judgment is therefore inappropriate, if "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A "material fact" exists only if there is a factual dispute that is outcome determinative under governing law. *Id.* at 248, 106 S.Ct. at 2510; *Howland v. Kilquist,* 833 F.2d 639, 642 (7th Cir.1987). The party seeking summary judgment has the initial burden of showing that no such issue of material fact exists.

■ When a properly supported motion for summary judgment has been made, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial." *Id.* Like the movant, the nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather he must support his contentions with proper documentary evidence. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Howland,* 833 F.2d at 642. Moreover, the opposing party is entitled to the benefit of all favorable inferences that can reasonably be drawn from the underlying facts but not every conceivable inference. *De Valk Lincoln Mercury, Inc. v. Ford Motor, Co.,* 811 F.2d 326, 329 (7th Cir.1987). We consider this appeal with these principles in mind.

**DISCUSSION**

A. *There Is No Error in Considering First Credit's Estoppel Claim*

■ Arnold argues that the bankruptcy court was wrong in addressing only the estoppel issue in its opinion. According to Arnold, the lower court first should have addressed whether First Credit is a holder in due course. Arnold contends that once it is determined that First Credit is not a holder in due course, First Credit will be precluded from asserting an estoppel defense because it will be subject to Arnold's claims and defenses. In support of her contention that First Credit should be subject to her claims and defenses and disallowed from asserting an estoppel defense, Arnold presents this Court with a scattershot of legal arguments. For the following reasons, we determine that none of the legal arguments put forth by Arnold dictate that we disallow First Credit's assertion of an estoppel defense.

■ Arnold's first argument that First Credit is subject to her claims and defenses without an estoppel escape, relies on section 5802 of the Illinois Residential Improvement Loan Act ("RILA"). Ill.Ann. Stat. ch. 17, para. 5802 (Smith–Hurd 1981). Arnold argues that since this section gives holder-in-due-course status only to those persons who hold a negotiable instrument after having obtained a completion agreement and since First Credit is not a holder of a negotiable instrument, the inevitable conclusion is that the completion certificate signed by Arnold is ineffective to prevent First Credit from being subject to Arnold's claims and defenses. We do not need to address the substance of this argument

because the RILA only applies to residential transactions and the transaction at issue in this case was not residential.

■ Arnold next argues that the completion certificate should not be given effect because it is in contravention of the FTC holder language in the installment contract. The FTC holder language says that "any holder of this consumer credit contract is subject to all claims and defenses that the debtor could assert against the seller of the goods or services obtained" under the contract. This language is required by the Federal Trade Commission to be in consumer credit transactions. 16 C.F.R. § 433 (1992). Arnold contends that the FTC holder language in the installment contract, which First Credit bought from Budget, trumps any effect that the completion certificate and her oral representations might otherwise have on First Credit's liability.

Arnold cites *Heastie v. Community Bank of Greater Peoria*, 727 F.Supp. 1133 (N.D.Ill.1989) in support. In that case, the court held that it was violation of the Illinois Consumer Fraud and Deceptive Businesses Practices Act for a creditor to include the FTC holder language in its contract and to also have the buyer sign a completion certificate stating that the creditor "does not guarantee the material or workmanship or inspect the work performed" by the seller. The *Heastie* court found that the non-responsibility clause inserted in the completion certificate "sidestepped" the Federal Trade Commission's requirement of inclusion of the FTC holder language. *Id.* at 1137. Arnold argues that similarly, First Credit's reliance upon Arnold's statements that she was satisfied with Budget's work and possessed no claims against it is an attempt to sidestep the FTC holder language in the installment contract. Arnold concludes that this Court should therefore ignore the completion cer-

tificate and Arnold's oral statements and merely rely upon the FTC holder language in the installment contract, which places liability upon First Credit.

Unlike *Heastie*, Arnold's case involves a business transaction, not a consumer transaction. Other than relying on *Heastie* by analogy, this Court has been provided with no legal basis for not giving effect to Arnold's affirmations in the completion certificate and to her oral statements to First Credit. Arnold, by signing the completion certificate and by orally confirming that all of the work was completed to her satisfaction, induced First Credit to issue a loan, and thereby placed herself at risk to being estopped from asserting differently later. Arnold created the contradiction in liabilities through her representations and cannot now in times of financial difficulty assert that she was defrauded or deceived.[1]

The case of *U.S. Home Corp. v. George W. Kennedy Construction Co.*, 610 F.Supp. 759 (N.D.Ill.1985) is also inapposite. The court in *U.S. Home Corp.* rejected the seller's argument that the buyer was estopped from raising its contract defenses where the buyer had accepted the work under the contract. The contract between the parties unequivocally stated that acceptance of the work shall not operate as a waiver of any portion of the contract or any right to damages. *Id.* at 761. *U.S. Home Corp.* is distinguishable because, unlike the instant case, the seller expressly waived its right to raise the estoppel defense. First Credit, on the other hand, has not waived its right to assert estoppel by an express articulation that Arnold's written and oral representations of satisfaction would have no effect on Arnold's later assertion of a claim for damages.

■ Arnold also contends that she was the victim of an unconscionable contract because when she signed the installment

---

1. Arnold cites other cases in support that are similarly distinguishable. In *Hinojosa v. Castellow Chevrolet Oldsmobile*, 678 S.W.2d 707 (Tex. Ct.App. Corpus Christi 1984) and in *Hernandez v. Forbes Chevrolet Co.*, 680 S.W.2d 75 (Tex.Ct. App. 13th Dist.1984), the courts refused to enforce waiver-of-defenses clauses whereby the buyer agreed not to assert against the holder

where the contract also contained the FTC holder notice. These cases are distinguishable, not only because those cases dealt with consumer transactions and not with business transactions, but also because in Texas, unlike in Illinois, waiver-of-defense clauses are prohibited in retail installment contracts. *See* Tex.Rev.Civ.Stat. Ann. art. 5069–7.07(6) (Vernon Supp.1984).

contract she was not aware that she would eventually be asked to sign a completion certificate which included a clause stating that she was satisfied with the work performed and that she possessed no claims for damages. In this Court's view, if Arnold did not agree that the work performed was completed to her satisfaction, she should not have signed the completion agreement. Moreover, we find untenable Arnold's argument that she was unaware that she represented in the completion certificate and orally to First Credit that she was satisfied with the work performed by Budget.

Arnold's analogy to cases involving disclaimers of warranty liability fails as well. The analogy put forth by Arnold is the following: the FTC holder language is analogous to an express warranty and the language negating liability in the completion certificate is analogous to an illegal post-sale disclaimer of an implied warranty. Because post-sale disclaimers by sellers are not given effect, Arnold contends that her statements negating First Credit's liability should also not be given effect. This analogy fails because Arnold, not the seller, is disclaiming the express warranty in this case. Arnold needed only to inform First Credit that the work had not been completed to her satisfaction to avoid executing the certificate and being bound by her representation that she had no claims and defenses.

Having dispensed with Arnold's arguments, we now proceed to examine the merits of First Credit's estoppel defense.

## B. *First Credit's Defense of Estoppel*

■ Arnold will be estopped from asserting her claims against First Credit if these conditions are met: (1) Arnold made representations that induced reliance by First Credit; (2) Arnold had actual or implied knowledge that the representations were false when made; (3) Arnold had an intent or expected that First Credit would rely on the misrepresentation; (4) First Credit relied upon the misrepresentation without knowledge or a reasonable means of knowing the true facts; and (5) First Credit will

suffer prejudice if Arnold is allowed to deny the truth of her assertions in the completion agreement. *Dresser Industries, Inc. v. Pyrrhus, A.G.,* 936 F.2d 921, 930 (7th Cir.1991); *UIDC Management, Inc. v. Sears, Roebuck and Company,* 167 Ill.App.3d 81, 117 Ill.Dec. 813, 816, 520 N.E.2d 1164, 1167 (1988) (citations omitted). We find that all of these conditions are present in the case before us. Because no genuine issue of material fact exists precluding a finding of estoppel as a matter of law, we affirm the decision of the bankruptcy court.

■ Although Arnold seemed to admit in the lower court that the first element in the estoppel test was met, Arnold now claims on appeal that the first element of the estoppel test is not met. She claims that she did not make a misrepresentation to First Credit. Rather than dispute the fact that she made a representation to First Credit that induced its reliance, in this Court's opinion, what Arnold actually disputes in her briefed arguments is the second element of the test for estoppel, that is, whether Arnold had actual or constructive knowledge that the representations were false when made. Arnold acknowledges that her oral and written statements that she was satisfied with the work may have been untrue as to defects of which she either actually or constructively possessed knowledge because of their obviousness, but Arnold claims that latent defects existed of which she was unaware either actually or constructively at the time she signed the completion certificate. She claims that several defects "did not become apparent until after the completion certificate was signed." According to Arnold's appeal brief, these defects included the faulty installation of the toilet in the first floor bathroom, the floor in the first floor kitchen, the floor in the second floor bathroom, the toilet in the second floor bathroom, and the toilet in the third floor bathroom and the windows. Thus, Arnold concludes an issue of fact exists that must be tried, mainly, which defects were known to her and which were not at the time she made the oral and written statements in

the completion certificate and to First Credit.

Because we find that Arnold fails to support the alleged existence of latent defects with anything but a conclusory allegation, we reject her argument. Like the movant, the nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather she must support her contentions with proper documentary evidence. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553; *Howland,* 833 F.2d at 642. Although we recognize that the opposing party is entitled to the benefit of all favorable inferences that can reasonably be drawn from the underlying facts, she is not entitled to every conceivable inference. *De Valk Lincoln Mercury, v. Ford Motor,* 811 F.2d 326, 329 (7th Cir.1987). In her complaint, Arnold lists eighteen defects in the repairs performed by Budget.[2] None of these are alleged to have been hidden or concealed or latent. Furthermore, this Court can discern no quality inherent in the defects that Arnold in her appeal brief claims were latent, or in any of the listed defects for that matter, which would preclude their discovery by Arnold at the time she executed the completion agreement or made her oral statement of satisfaction to First Credit. Her conclusory argument to the contrary is not enough to withstand summary judgment.

██ Because Arnold fails to provide evidence illustrating that any latent, undiscoverable defects existed, we conclude that Arnold knew or should have known that the representations that she made to First Credit were untrue. She admits that at the time she signed the certificate and made the oral representations she was not satisfied. During the construction process Arnold complained about a leak from the third floor to the second floor, and about improper installation of windows and flooring. She claims that her complaints had not been addressed at the time she signed the completion certificate and confirmed to First Credit her satisfaction. Because Arnold possessed actual knowledge of many of the alleged defects, and certainly possessed constructive knowledge of all of the rest, we find that elements one and two of the above test for estoppel are met in this case.

██ Arnold argues that the third element is not met because she did not intend that First Credit would rely upon her oral and written representations. Intent for the other party to rely is not required; negligence on the part of the party whose conduct misleads the other is enough. *Farmers & Merchants Bank v. Davis,* 151 Ill. App.3d 929, 104 Ill.Dec. 850, 855, 503 N.E.2d 565, 570 (1987) (citations omitted). Illinois courts hold that element three is met if it is reasonable for the other party to rely on the misrepresentation. *Meier v. Aetna Life and Casualty Standard Fire Ins. Co.,* 149 Ill.App.3d 932, 103 Ill.Dec. 25, 28, 500 N.E.2d 1096, 1099 (1986). We conclude that even if Arnold did not intend for First Credit to rely upon her representations, Arnold was negligent and should have expected First Credit to rely upon her representations. We disagree with Arnold that the presence of the FTC holder language made First Credit's reliance upon Arnold's representations unreasonable.

**2.** The defective repairs include the following: failure to properly install the first floor toilet; failure to correct the improperly installed first floor toilet by re-laying tile; inadequate plaster work in the first floor bathroom; improper installation of tile floor and underlay in first floor kitchen causing the underlay to separate from the floor, and failure to level a lip arising from this floor; installation of a tile floor instead of a wood floor in first floor kitchen; improper installation of a tile floor in the second floor bathroom causing the floor to hump; failure to remove bathtub leaving openings for moisture to collect; inadequate plaster work in the second floor bathroom; failure to install a shoe or base under the second floor toilet; improper installation of floor in third floor bathroom due to failure to disconnect bathtub; failure to correct damage to pipes and seals caused by improper installation of floor in third floor bathroom; failure to correct plaster damage resulting from improper installation of floor in third floor bathroom; failure to install a shoe or base under the third floor toilet; inadequate plaster work in the third floor bathroom; installation of tile floor instead of wood in third floor bathroom; inadequate plaster work in hall; and failure to reset woodwork in the public hall after plastering.

The completion certificate contained a clause that in large, bold letters, expressly warned Arnold not to sign unless Budget had completed the improvements to her satisfaction. It was reasonable for First Credit to rely upon Arnold's signature as evidence that she was satisfied and that she possessed no defenses to the installment contract. In addition, it was even more reasonable for First Credit to so rely after its follow-up phone call to Arnold substantiated what she had stated in the completion certificate. Based on her statements, First Credit could reasonably assume that Arnold would have taken into account all open and obvious defects that existed at the time she made the statements and would have affirmatively assessed the status of the repairs. Hence, we agree with the bankruptcy court that Arnold was culpably negligent in signing the completion certificate and in making oral representations to First Credit that she was satisfied with the work as performed.

For the fourth element to be satisfied, First Credit must have relied upon Arnold's misrepresentation without knowledge or a reasonable means of knowing the true facts. Arnold does not dispute that First Credit actually relied upon the misrepresentation. What is in dispute is whether First Credit acted without a reasonable means of knowing the true facts. We agree with the court below that First Credit, in relying on Arnold's statements, did act without a reasonable means of knowing the true facts. First Credit possessed no duty to second-guess Arnold's own statements of satisfaction. To do so would have required First Credit to have inspected the Premises. Such an inspection, however, would shed little light on whether Arnold was satisfied with the work. That is a subjective test that First Credit could not have known was false by objective inspections. Furthermore, the whole purpose of a satisfaction clause is to prevent assignees of these types of contracts from having to investigate whether the obligor has any defenses. Requiring such an investigation in every case would greatly increase transaction costs of these assignments. If transaction costs increase, either the borrower will pay more, or will be prohibitively cost out of the market for building repair. Indeed, in this case, the facts suggest that Budget would not have entered into an agreement with Arnold had it not been reasonably sure it could locate an assignee to purchase the installment contract from it. As did the lower court, we find that First Credit's use of and reliance on the satisfaction clause to assure itself that no known or discoverable defects existed was reasonable.

Both the parties and this Court agree that First Credit would be prejudiced if Arnold is allowed to assert her claims against it. Because all five elements of the test for estoppel are met in this case, we affirm the judgment of the bankruptcy court and find for First Credit.