# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| **NASHVILLE ELECTRIC SERVICE,** )  | |
| ) | |
| Plaintiff/Counter- ) | **Davidson Circuit No. 93C-2880** |
| Defendant/Appellee, ) | |
| ) | |
| **VS.** ) | **Appeal No. 01A01-9708-CV-00383** |
| ) | **(consolidated)** |
| **DON STONE,** ) | |
| ) | |
| Defendant/Counter- ) | |
| Claimant/Appellant, ) | |

APPEAL FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE
THE HONORABLE WALTER C. KURTZ, JUDGE

**FILED**

**July 15, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

**DAVID J. TARPLEY**
**LEGAL AID SOCIETY OF MIDDLE TENNESSEE**
Nashville, Tennessee
Attorney for Appellant


**JOHN E. BUFFALOE, JR.**
**BUFFALOE & SHARP**
Nashville, Tennessee
Attorney for Appellee


**AFFIRMED**




**ALAN E. HIGHERS, J.**



**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

Defendant/counter claimant/appellant, Don Stone ("Stone"), appeals the judgment of the trial court dismissing his counterclaim holding that the Federal Trade Commission ("FTC") rules and regulations do not impose upon a third party creditor such as NES the direct responsibility of placing the language of the "holder" rule codified at 16 C.F.R. § 433(b)(2) in their loan documents. For reasons stated hereinafter, we affirm the judgment of the trial court.

In 1991, Stone was contacted by a Nashville air conditioning and heating contractor, Associated Air/Heat and Construction, Inc. ("contractor"), which was soliciting his business. An appointment was set up for a representative of the company to visit Stone at his home.

Stone did not have central heat and air conditioning. Instead, he used kerosene heaters and a wood stove to heat his home. As a result of this meeting, Stone purchased a central heat and air system that was installed by the contractor. The contractor's representative told Stone that he could arrange financing for the system via NES. No other financing options were discussed. Contractor contacted NES and made all the arrangements for financing of the heating and air system. Stone had no part in the financing arrangements.

After the system was installed, it never heated properly. Specifically, the system failed to discharge the warm air with sufficient force to reach the lower part of the rooms. Various tests were run by experts to calculate the discrepancy between air in the lower part of the rooms and air in the upper parts. These test showed variances as much as 20 degrees Fahrenheit between the upper and lower parts of the rooms. Stone complained about his system and was unable to pay the huge electric bills caused by the system's operation. Stone went back to the use of his kerosene heaters and wood stove. He also quit paying his loan to NES.

NES inspected Stone's system twice, discovering both times that the force with

2

which the air was emitted was insufficient. NES does not deny the fact that the system which was installed in Stone's home does not heat properly. But as in all such cases, NES disclaims any and all responsibility for the problem in the system for defects and for faulty work of the contractor.

Stone argues that NES should be required to include within its Residential Energy Services Program loan documents the language of the FTC "holder" rule, 16 C.F.R. § 433.2(b), and the fact that NES does not do so should be viewed as an unfair trade practice in violation of the Tennessee Consumer Protection Act. Consequently, Stone contends that he should be awarded his actual damages as proved at trial or in the alternative, his claim should be remanded to the trial court for a determination of the actual damages suffered by him as a result of the defective work of the HVAC installer.

NES contends that the trial court was correct in recognizing that the FTC itself did not apply the said regulation to a lender. Additionally, NES claims that it is exempt from the Tennessee Consumer Protection Act under Tenn. Code Ann. § 47-18-111(a)(1) which exempts those whose actions or transactions are "required or specifically authorized under the laws administered by, or rules and regulations promulgated by, any regulatory body or officer acting under the authority of the state of Tennessee or of the United States." NES asserts that it was operating under a program in conjunction with the Tennessee Valley Authority ("TVA"). NES further contends that TVA is an agency of the U.S. Government that contracted with Metropolitan Government of Nashville and Davidson County to run the Residential Energy Services Program. NES states that this program was funded by TVA and administered by NES and, as such, was authorized by the laws, rules, and regulations promulgated by TVA. Therefore, NES contends, this transaction was exempt from the Tennessee Consumer Protection Act.[1]

---

[1]On appeal, NES argues that its action are exempt from the Tennessee Consumer Protection Act. Specifically, NES insists that it falls under the exemption provided for under Tenn. Code Ann. § 47-18-111(a)(1):

> (a) The provisions of this part do not apply to:
> (1) Acts or transactions required or specifically authorized under the laws administered by, or rules and regulations promulgated by, any regulatory bodies or officers acting under the authority of this state or of the United States. . .

NES did not make the argument in the court below, and presents this theory for the first time on appeal.

On August 13, 1993, NES filed a civil action against Stone in the Metropolitan General Sessions Court for Davidson County, Tennessee. An appeal was taken to the Circuit Court on pauper's oath, and on June 30, 1994, an answer and counterclaim were filed by Stone. Central to this appeal is Stone's assertion that NES, while not a participant in the contractor's alleged wrongdoings, had violated the Tennessee Consumer Protection Act by failing to include in its loan documents the language specified in part (b) of the FTC "holder" rule at 16 C.F.R. § 433. Stone contends that if this language had been included in such documents, NES would have subjected itself, as a third party lender, to limited liability for any claims or defenses that Stone might have had against the contractor who installed the system.

On August 22, 1994, a third party complaint was filed by Stone against the contractor. At the time of his filing this complaint, Stone was unaware that the contractor's business was defunct and bankrupt.

On November 27, 1995, the trial court issued a memorandum opinion in which the court found that the heating and air system purchased by Stone and financed by NES did not heat Stone's home satisfactorily, but that NES was not liable to Stone for the shortcomings of the system. Specifically, the court rejected Stone's "back door interpretation" of the law and held that because the FTC rule does not impose upon third party creditors the direct responsibility of placing the language of the "holder" rule in their own documents, there could be no Tennessee Consumer Protection Act violation by a third party creditor who omits the language of the rule from its documents. Judgment was entered against Stone for the full unpaid balance of his account with NES plus attorney's fees, for a total judgment of $9,874.00. The counterclaim was dismissed. Stone's motion for reconsideration of the judgment was overruled by order entered on January 29, 1996.

By order entered on June 21, 1996, Stone's initial appeal to this Court was dismissed without prejudice because the record contained no final order dismissing the

---

Questions or issues not raised in the trial court will not be entertained on appeal. *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983); *Seay v. County of Shelby*, 672 S.W.2d 404, 409 (Tenn. Ct. App. 1984); *Sutton v. Bledsoe*, 635 S.W.2d 379, 382 (Tenn. Ct. App. 1981).

third party complaint filed against the defunct contractor. That error was corrected by order entered in the trial court on March 10, 1997. Permission to appeal on pauper's oath was granted by the trial court on May 2, 1997.

The sole issue before this Court is as follows:

> Did NES violate the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*, by failing to ensure that the loan documents presented by it and signed by Stone to finance the purchase of a central heating and air system for his residence under the Residential Home Energy Services Program contained the statement required by the FTC "holder" rule, 16 C.F.R. § 433?

For many years, the doctrine of holder-in-due-course has allowed a holder to demand payments from a consumer for goods or services purchased on an installment plan, even thought the seller may unjustifiably refuse to service, repair, or replace the goods or services promised during the sales transaction. On November 14, 1975, the FTC addressed this problem by promulgating a final Trade Regulation Rule, 16 C.F.R. § 433, concerning the Preservation of Consumers' Claims and Defenses. 41 Fed. Reg. at 20022 (1976). Part 433 stipulates that it constitutes an unfair and deceptive practice within the meaning of Section 5 of the Federal Trade Commission Act (15 U.S.C. § 45) for a seller, in the course of financing a consumer purchase of goods or services, to employ procedures which make the consumer's duty to pay independent of the seller's duty to fulfill his or her obligations. 41 Fed. Reg. at 20023. The federal regulation provides:

> In connection with any sale or lease of goods or services to consumers, in or affecting commerce as "commerce" is defined in the Federal Trade Commission Act, it is an unfair or deceptive act or practice within the meaning of Section 5 of that Act for a *seller*, directly or indirectly, to:
>
> (b) Accept, as full or partial payment for such sales or lease, the proceeds of any purchase money loan (as purchase money loan is defined herein), unless any consumer credit contract made in connection with such purchase money loan contains the following provision in at least ten point, bold face, type:
>
> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY

5

HEREUNDER BY THE DEBTOR SHALL NOT EXCEED
AMOUNTS PAID BY THE DEBTOR HEREUNDER.

FTC Consumer Claims and Defenses, 16 C.F.R. § 433.2 (1975) (emphasis added).

Apparently, the FTC found that all too often, a consumer would enter into a loan to finance the purchase of goods or services, only to discover that the quality of the goods ultimately is woefully substandard or that the services were performed in a manner that is less than desirable. The purchasers of such goods or services might think it inequitable to continue to pay for something so substandard or for something not received at all. However, if they probe deeper into the situation, such consumers often find that their obligation to pay remains even though the seller of such goods or services has failed in his or her obligation to perform.

Many times, as is the case here, a seller will arrange a direct loan for the consumer from the lender. Because the seller is never formally part of this loan, the seller's actions cannot provide a defense, and this is so even if all parties contemplated that the loan would go to pay the seller and even if the seller had a referral relationship with the lender. It is true that, in theory, the consumer could bring an action against the seller, but many times this is less than comforting when the seller is nowhere to be found or has gone out of business.

Part 433 is the FTC's attempt to stem the tide of these abuses. The FTC aimed to abolish these inequities by placing a greater responsibility upon financial institutions to police the merchants with whom they deal. Statement of Basis and Purpose, 40 Fed. Reg. 53,506, 53,520 (1975). The FTC "holder" rule has two basic requirements. Under the first requirement, the seller who makes a loan pursuant to a consumer credit contract must include a notice in the contract that any holder of the contract is subject to the claims and defenses which the consumer could assert against the seller. 16 C.F.R. § 433.2(a). The second of these requirements is somewhat similar, but deals with the seller who refers consumers or is affiliated with a lender. This provision makes it an unfair or deceptive

6

practice for such a seller to accept the proceeds from a loan unless the consumer credit contract includes a notice that any holder of the contract is subject to the claims and defenses that the consumer could assert against the seller. *Id.* § 433.2(b).

Here, Stone insists that NES should be held liable under the Tennessee Consumer Protection Act for not putting the language of the FTC "holder" rule within its loan documents. Specifically, Stone importunes this Court to find that NES has committed an unfair and deceptive trade practice under Tenn. Code Ann. § 47-18-101 *et seq.* by not including in its loan documents the FTC "holder" rule language. He claims that the Tennessee Consumer Protection Act incorporates by reference the language of the FTC rule quoted above.

In support of his argument, Stone cites this Court to two cases, one from the Federal District Court for the Northern District of Illinois and one from the Pennsylvania Court of Common Pleas. Both cases cited by Stone contain distinguishable facts from the instant case. The more important of the two is *Heastie v. Community Bank of Greater Peoria*, 727 F. Supp. 1133 (N.D. Ill. 1989). In *Heastie*, plaintiff agreed to purchase a satellite dish from defendant U.S. Satellite and signed a cash sales contract. *Id.* at 1134, 1135. U.S. Satellite and co-defendant Community Bank of Peoria had a contractual agreement in which Community Bank of Peoria agreed to provide credit for U.S. Satellite customers. Plaintiff signed the loan documents which were provided by Community Bank of Peoria and which contained the "holder" rule language as required by § 433. The documents, however, also contained a non-responsibility clause which relieved Community Bank of Peoria of any responsibility for the quality of work performed by U.S. Satellite. Ultimately, the plaintiff discovered that the satellite dish was defective.

The Illinois Federal District Court conceded that part 433 had no application to lenders, but stated that the Illinois Consumer Fraud Act was broader than the FTCA. Consequently, the court held that Community Bank of Peoria was in violation of the Illinois Consumer Fraud Act, and therefore liable to the plaintiff for damages. *Id.* at 1133, 1139.

7

Specifically, the court concluded that Community Bank of Peoria's use of the non-responsibility clause in its loan documents, although not violative of the FTCA, violated the Illinois Consumer Fraud Act, and, as such, was an unfair and deceptive trade practice. *Id.* at 1138. The court noted that the Illinois General Assembly had specifically stated that the Consumer Fraud Act "shall be liberally construed to effect the purposes thereof."

The precise language under the federal law makes it unfair or deceptive for a *seller* to accept proceeds from a loan unless the consumer credit contract includes a notice that any holder of the contract is subject to the claims and defenses that the consumer could assert against the seller. This same cannot be said of the lender. Unlike *Heastie*, here, the seller did not place the FTC "holder" rule language in the credit documents as mandated by § 433 stated above. As noted in *Heastie*, however, this regulation does not apply to the lender. The trial court correctly stated that the burden is totally on the seller either to include the required notice or not accept loan proceeds if the notice is not included.

We decline to cast the net of the Tennessee Consumer Act any wider than the legislature has chosen to do. NES was in full compliance with the requirements of the FTCA. For this Court to declare that a lender's failure to include the FTC "holder" rule language in its loan documents as a violation of the Tennessee Consumer Protection Act is legislative in nature. Until the Tennessee General Assembly, in its wisdom, chooses to make a violation by the seller of 16 C.F.R. § 433 an "unfair or deceptive" act or practice by the lender, we will not undertake to do so.

Accordingly, we affirm the judgment of the trial court dismissing Stone's counterclaim under the Tennessee Consumer Protection Act. Costs of this appeal are taxed to Stone, for which execution may issue if necessary.

8

_____
HIGHERS, J.


CONCUR:


_____
FARMER, J.


_____
LILLARD, J.


9