UIDC MANAGEMENT, INC., *et al.*, Plaintiffs-Appellants, v. SEARS, ROEBUCK AND COMPANY, Defendant-Appellee.

First District (4th Division)   No. 87—1227

Opinion filed March 3, 1988.

H. Roderic Heard, Joan M. Fencik, and Cal R. Burton, all of Wildman, Harold, Allen & Dixon, of Chicago, for appellants.

Arnstein, Gluck, Lehr & Milligan, of Chicago (Arthur L. Klein, Michael A. Stiegel, Richard L. Rosen, and John T. Wagener, of counsel), for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

This is a declaratory judgment action. The trial court dismissed the complaint of the plaintiff, UIDC Management, Inc., on a motion

to dismiss pursuant to section 2—615 of the Illinois Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 2—615.)[1] The only issue before the trial court and before this court is whether the complaint states a cause of action.

The defendant, Sears, Roebuck and Company, Marshall Field & Company, J. C. Penney Properties, Inc., and the plaintiff, UIDC, owned contiguous properties in Orland Park and on March 15, 1976, entered into what was termed an "Easement and Operating Agreement." With UIDC as the developer, the parties agreed to their mutual benefit to construct a shopping center to be known as Orland Square. Each of the parties retained title to its respective real estate. The complaint alleges that the same parties had entered into similar agreements at Oak Brook and three other shopping centers. The contract, which was to continue in operation for 35 years after the shopping center opened, provided that maintenance of Orland Square shall be "in a first-class manner with the same high quality standards as that provided in the Oakbrook Shopping Center, Oak Brook, Illinois." At the same time of the execution of this agreement, it had been the custom and practice of the parties at the other centers that UIDC exclusively would maintain all common areas in the center, including the common areas on Sears' property.

On December 13, 1976, UIDC submitted to Sears confirmation of the fraction to be used to calculate Sears' *pro rata* share of common-area costs incurred by UIDC in maintaining the exterior common area for "1976 and subsequent years." That percentage was 0.1585 as confirmed by a response from Sears one week later and was used over the years to calculate Sears' *pro rata* share of the maintenance. UIDC alleged that each year from the time that the shopping center was constructed in 1976 through 1984 UIDC maintained all of the common areas at Orland Square in a first-class manner according to the standards of the Oak Brook Center.

On December 31, 1984, Sears informed UIDC that Sears intended to perform its own maintenance. UIDC originally contended that under the terms of the easement and operating agreement UIDC had the right and obligation to perform the maintenance. The trial court found that Sears had the right to perform its own maintenance and that finding was affirmed on a prior appeal to this court. (*UIDC Man-*

---

[1]While the motion has been denominated a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure, the parties during argument in the trial court recognized that the motion is actually a motion under section 2—615 of the Illinois Code of Civil Procedure.

*agement, Inc. v. Sears Roebuck & Co.* (1986), 141 Ill. App. 3d 227, 490 N.E.2d 164.) Although we affirmed that finding, we remanded the matter back to the trial court to give UIDC an opportunity to amend the complaint, as it had previously requested the trial court, on the legal theories of estoppel and waiver.

UIDC did in fact file an amended five-count complaint seeking declaratory relief on the issues of waiver, estoppel, modification of contract, *laches* and one count for breach of the contract subsequent to the termination of UIDC's services. The dismissal of all five counts of the UIDC complaint brings about this appeal.

The first count asks for a declaration that Sears has waived its right under the contract to maintain the common areas on its property and that UIDC is entitled and obligated to maintain exclusively all common areas at the center, including those located on Sears' property. It further asks that by virtue of the waiver Sears be required to pay to UIDC Sears' *pro rata* share of the common-area maintenance charges. The allegations in the complaint are not specific as to the timing, but it is clear from the arguments before the trial court and this court that the declaration proposed by UIDC is to cover the balance of the contract term, approximately 25 years. UIDC contends that relying on a good-faith interpretation of the agreement and on Sears' conduct and correspondence, Sears has waived all provisions in the operating agreement which permitted Sears to maintain the common areas located on its parcel. In exchange for this waiver Sears received valuable consideration in the form of economies of scale and has also benefited by UIDC's extensive experience in shopping center management. UIDC also contends that the custom and practice of the parties during the term of the operating agreement evidences the fact that Sears intentionally relinquished its right to maintain the common areas located on its parcel.

■■ ■ Waiver is the intentional relinquishment of a known right. It can be demonstrated by words or by conduct. (*Lempera v. Karner* (1979), 79 Ill. App. 3d 221, 223, 398 N.E.2d 224.) It can also be inferred from delay in asserting a right. (*First Trust & Savings Bank v. Skokie Federal Savings & Loan Association* (1984), 126 Ill. App. 3d 42, 45, 466 N.E.2d 1048.) To be deemed a waiver the acts must be inconsistent with an intention to insist upon the right and must show an intentional relinquishment of that right. (*John Kubinski & Sons, Inc. v. Dockside Development Corp.* (1975), 33 Ill. App. 3d 1015, 1020, 339 N.E.2d 529.) Given these propositions of law, we do not believe that the facts alleged by UIDC are sufficient to raise the issue of waiver.

Waiver commonly occurs in situations where a party to a contract has the right to expect certain performance within a definite period of time. If the parties act inconsistently with that time provision, then the provision is considered waived and the contract proceeds accordingly. The requested finding of waiver in the present cause is significantly different. The effect of a finding of waiver of the provision in the contract that allows Sears to maintain its property in effect creates a new contract because it requires that for the remainder of the contract term, approximately 25 years, UIDC will maintain the property. The terms of this proposed implied contract are highly uncertain. The fact that the terms are not precise does not mean that there could not be such an implied contract. However, it militates against the concept advanced by UIDC, that is, that by waiving the right to enforce the provision of the contract to maintain its own premises, Sears intended to enter into a separate maintenance agreement for a period of 25 years. In our view, the fact that for over a period of nine years Sears permitted UIDC to maintain the property and paid its share of the maintenance does not constitute conduct inconsistent with an intention to insist upon its right to maintain its property during the remaining 25 years of the contract term.

■■ ■ Relying on the same facts, UIDC contends that Sears is estopped from refusing to hire UIDC for the remaining 25 years of the contract term. To invoke the doctrine of estoppel, six factors must be present:

" '(1) Words or conduct by the party against whom the estoppel is alleged amounting to a misrepresentation or concealment of material facts; (2) the party against whom the estoppel is alleged must have knowledge, either actual or implied, at the time the representations were made, that they were untrue; (3) the truth respecting the representations so made must be unknown to the party claiming the benefit of the estoppel at the time they were made and at the time they were acted on by him; (4) the party estopped must intend or expect that his conduct or representations will be acted on by the party asserting the estoppel or by the public generally; (5) the representations or conduct must have been relied and acted on by the party claiming the benefit of the estoppel; and (6) the party claiming the benefit of the estoppel must have so acted, because of such representations or conduct, that he would be prejudiced if the first party is permitted to deny the truth thereof.' " (*National Tea Co. v. 4600 Club, Inc.* (1975), 33 Ill. App. 3d 1000, 1003, 339 N.E.2d 515, quoting *Lowenberg v. Booth* (1928), 330 Ill.

548, 555-56, 162 N.E. 191, 195.)

While the allegations show that there has been reliance by UIDC to its detriment, those allegations do not show that there has been any misrepresentation or concealment. Sears merely permitted UIDC to maintain Sears' property and paid its *pro rata* share of 15.85% of the cost of maintenance. The estoppel does not create an affirmative duty upon Sears to contract with UIDC for the remaining 25 years of the contract term.

■ UIDC also makes a claim that there has been a modification of the contract. Modification, it is alleged, occurred over the course of nine years based upon two writings which evidenced Sears' intention to be bound by the parties' long-standing practice with respect to common-area maintenance. These writings revealed that in 1976 UIDC proposed that Sears pay a *pro rata* share amounting to 15.85% of the common-area maintenance costs. Sears accepted the writing on December 22, 1976. Accordingly, UIDC argues, there is a valid allegation of an offer, acceptance and consideration which are essential to a claim for modification. (*Scutt v. La Salle County Board* (1981), 97 Ill. App. 3d 181, 185, 423 N.E.2d 213.) Sears maintains that the course of conduct between the parties was one in which annual bids and offers made by UIDC to maintain the property were accepted by Sears on an annual basis. Sears argues that the acreage correspondence adds nothing to UIDC's position. In our opinion, the writings relied upon by UIDC do not indicate that there was an offer and acceptance to contract for a period of 25 years for UIDC to maintain the property. The fact that these matters were handled on a yearly basis militates against the conclusion that a contract for 25 years was intended. We therefore conclude that the facts alleged are insufficient to support the contention that each party intended to be bound by the agreement in question for the remaining 25 years of the contract.

■ UIDC also requests a declaration that Sears be precluded from invoking the right to maintain the property under the terms of the contract because Sears has been guilty of *laches*. In support of this proposition, UIDC cites the case of *Slatin's Properties, Inc. v. Hassler* (1972), 53 Ill. 2d 325, 291 N.E.2d 641. UIDC's contention on appeal with regard to *laches* is contained in one paragraph and merely states that it is a proper defense and it is not an attempt to create new rights that the defense is untimely. It does not argue the *Slatin's* case nor does it explain why it is a proper defense. We do not believe that this issue is appropriately raised on appeal and we will not consider it. *Thrall Car Manufacturing Co. v. Lindquist* (1986), 145 Ill. App. 3d 712, 719, 495 N.E.2d 1132.

■ UIDC's final contention is that the contract has been breached, citing an article in the contract which provides that all common-area maintenance shall be performed "in a first-class manner with the same high quality standards" as was provided in a previous shopping center venture entered into between the same parties. UIDC alleges that since January 1985 Sears has not performed the maintenance in a first-class manner.

While the other counts of the contract are under the declaratory judgment act, this count alleges a breach of contract starting in January 1985 when Sears began to maintain the property itself. The contract provides that maintenance and lighting of the common areas shall be "maintained in a first-class manner with the same high-quality standards as that provided in the Oak Brook Shopping Center, Oak Brook, Illinois." UIDC alleges that since January 1985, Sears has failed to keep the roads, sidewalks and parking areas free of debris, free of snow and ice and other hazardous conditions, failed to maintain the roadways, failed to maintain the trees, grass and shrubbery and failed to eliminate rodents. UIDC claims that this is in breach of the operating agreement and that UIDC has suffered injury to its business reputation and has lost business and profits. Sears interprets this breach of contract as a claim by UIDC that Sears would be forever in breach of contract unless it retains UIDC because the Oak Brook standard, stated in the operating agreement, is capable of being satisfied only by UIDC. Sears then cites *Dwyer v. Graham* (1983), 99 Ill. 2d 205, 457 N.E.2d 1239, for the proposition that a promise is illusory or unenforceable if the promisor retains an unlimited right to control the nature and extent of the performance. We fail to interpret the formulation of the complaint in the same manner as Sears. The complaint simply states that Sears was in breach of the contract because they failed to maintain the property according to the standards to which they had agreed. It is well established that a complaint should not be dismissed if the facts alleged and the inferences from those facts indicate a possibility of recovery. (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 187, 380 N.E.2d 790.) On this basis, the dismissal of the breach of contract count is reversed and the cause remanded for further proceedings.

Affirmed in part; reversed and remanded in part.

JOHNSON and LINN, JJ., concur.