**In re Cathie ARNOLD, Debtor.**

**Cathie ARNOLD, Plaintiff,**

**v.**

**FIRST CREDIT CORPORATION, Defendant and Crossplaintiff,**

**v.**

**BUDGET CONSTRUCTION COMPANY, INC., Defendant and Crossdefendant.**

**FIRST CREDIT CORPORATION, Third Party Plaintiff,**

**v.**

**Donald SCHNEIDER, Third Party Defendant.**

**Bankruptcy No. 91 B 12375. Adv. No. 91 A 00974.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Sept. 30, 1992.

---

Robert J. Adams, Chicago, Ill., for debtor.

Jerome A. Vinkler, Connelly Mustes & Schroeder, Geneva, Ill., for Budget Const. Co.

Wade R. Joyner, Crowley, Barrett & Karaba, Chicago, Ill., for First Credit Corp.

Jack McCullough, Trustee, Chicago, Ill.

## AMENDED MEMORANDUM, OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter is before the court in connection with an adversary proceeding brought by the Debtor, Cathie Arnold, against First Credit Corporation and Budget Construction Company and a cross claim brought by First Credit against Budget and one of its officers, Donald Schneider, to determine the extent of a lien of First Credit on buildings owned by the Debtor and for other relief. At present, there are three motions before the court: (1) the motion of Budget to strike the complaint and for judgment on the pleadings; (2) the motion of First Credit for summary judgment on all remaining counts affecting it;[1] and (3) the motion of Budget and Mr. Schneider to dismiss Count II of First Credit's cross claim against them. For the reasons stat-

---

1. Initially, the Debtor sought relief on eight counts. In her brief in response to First Credit's motion for summary judgment, she conceded that summary judgment should be granted as to First Credit as to Counts III, IV and V (all of which related to violations of the Truth–In–Lending Act). Thus, the only remaining counts in the Debtor's complaints affecting First Credit are Counts I, II, VI, VII and VIII.

ed below, this court grants First Credit's motion for summary judgment on all remaining counts affecting it, but does not reach the merits of Budget's motion to strike and for judgment on the pleadings or the motion of Budget and Mr. Schneider to dismiss Count II of First Credit's cross claim.

### FACTS

The Debtor is the owner of two small apartment buildings on the same plot in Chicago. Combined, the two buildings contain five apartments. The Debtor lives in one apartment and rents out the remaining four.

In early 1990, the Debtor decided to make various repairs and improvements to the buildings. The Debtor contracted with Budget for it to do those repairs and improvements. The Debtor financed the work by agreeing to an installment contract that, inter alia, granted Budget a first mortgage on the buildings. On January 30, 1990, the contract was signed by the Debtor and by Mr. Donald Schneider, Vice President of Budget, who had arranged the financing.

Between February 9, 1990 and February 22, 1990, Budget worked on the Debtor's buildings for a total of 175.5 hours. According to Budget, only 7.5 hours of those hours were spent working on the Debtor's residence. At several points during the construction, the Debtor complained to Budget about the quality of the work Budget was doing on her buildings.

Despite those complaints, upon the completion of the construction, Budget sought and received from the Debtor the following signed statement (the "completion certificate"):

By signing this certificate, you certify that:

The Contractor has completed the work he or she agreed to do to your satisfaction. You confirm that you have no defenses or offsets to, or which might impair, the Retail Installment Obligation. . . .

In large bold letters, the statement continued:

DON'T SIGN THIS CERTIFICATE UNLESS THE CONTRACTOR HAS FINISHED THE IMPROVEMENTS HE OR SHE AGREED TO MAKE TO YOUR SATISFACTION.

On February 22, 1990, Budget sold the installment contract and mortgage to First Credit. First Credit expressly relied on the completion certificate signed by the Debtor in making the decision to purchase the installment obligation and mortgage. Furthermore, First Credit personally contacted the Debtor, who assured it that she was satisfied with Budget's performance and had no defenses which might impair the installment contract.

After the assignment, the Debtor experienced financial difficulties and stopped making the payments due under the installment contract to First Credit. On February 19, 1991, First Credit obtained a default judgment of foreclosure on the contract against the Debtor in the Circuit Court of Cook County, Illinois. On June 10, 1991, the Debtor filed a petition under Chapter 13 of the Bankruptcy Code.

Shortly after filing her Chapter 13 petition, the Debtor filed the instant adversary complaint against Budget and First Credit seeking to determine the extent of First Credit's lien against her real property. In reality, the Debtor seeks to have the installment contract rescinded, thus voiding any lien First Credit might have, and seeks a refund of all the money she paid under the contract. The Debtor argues that Budget is liable for breach of contract, breach of warranty, failure to comply with the Truth–in–Lending Act Notice to Cancel provision, and fraud under both the Illinois Consumer Fraud and Deceptive Business Practices Act and the common law. Furthermore, the Debtor claims that First Credit is not a holder in due course and thus is subject to all claims and defenses to the contract she has against Budget.

Subsequently, First Credit filed a cross claim against Budget and Mr. Schneider, alleging that Budget was liable to it for any loss it suffered pursuant to the Debt-

or's complaint on the basis of contractual indemnity, and that Budget and Mr. Schneider were liable to it for any loss suffered pursuant to the Debtor's complaint under a common law fraud theory.

In response to the Debtor's complaint, Budget filed a motion to strike and for judgment on the pleadings, and First Credit filed a motion for summary judgment. In addition, Budget and Mr. Schneider filed a motion to dismiss Count II (common law fraud) of the cross claim brought against them by First Credit.

## JURISDICTION AND PROCEDURE

As to First Credit's motion for summary judgment, this court has jurisdiction under 28 U.S.C. § 1334(b) as a matter arising under § 506 of the Bankruptcy Code. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B) and (K) as a matter involving the validity, priority and allowability of a lien and is before the court pursuant to Local Rule 2.33 of the United States District Court for the Northern District of Illinois referring bankruptcy cases and proceedings to this court for hearing and determination.

As to Budget's motion to strike and for judgment on the pleadings, this court has jurisdiction under 28 U.S.C. § 1334(c) as a matter related to a bankruptcy case. However, the parties have failed to comply with Fed.R.Bankr.Pro. 7008 and 7012, and thus the court is unable to make the requisite 28 U.S.C. § 157(c) determination as to whether this proceeding is core or noncore. Furthermore, if this proceeding is in fact noncore, this court has not been informed if both Budget and the Debtor have consent-

ed to this court's determination of the noncore proceeding.

Finally, there are serious constitutional questions as to whether this court has pendent jurisdiction to enter any dispositive ruling with respect to the cross claim between First Credit on the one hand and Budget and Mr. Schneider on the other.

## DISCUSSION

### I. *First Credit's Motion For Summary Judgment*

■ Under Fed.R.Civ.P. 56(c), made applicable to this proceeding by Fed.R.Bankr.P. 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and the admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In deciding a Rule 56(c) motion, the court must view all reasonable inferences from the underlying facts in a light most favorable to the nonmoving party. *Marine Bank, Nat. Ass'n v. Meat Counter, Inc.*, 826 F.2d 1577, 1579 (7th Cir.1987).

■ First Credit argues that, as a matter of law, the Debtor should be estopped from asserting any defenses based on the installment contract, since the Debtor orally and in writing represented that she had no defenses against Budget which might impair the installment contract, and thus that First Credit should be granted summary judgment.[2] This court agrees.

---

**2.** First Credit also claims that this court must give full faith and credit to the state court judgment of foreclosure awarded to First Credit, and therefore must bar the Debtor's action against it.

The res judicata doctrine serves the interests of judicial economy and finality by barring both parties to a judgment and their privies from relitigating the same causes of action. *Crop–Maker Soil Services, Inc. v. Fairmount State Bank*, 881 F.2d 436, 438 (7th Cir.1989). Under this principle, all claims and defenses that could have been raised in the prior litigation are foreclosed. *Matter of Chapman*, 132 B.R. 132, 144 (Bankr.N.D.Ill.1991). A federal court must give

the same full faith and credit to a prior state court decision that that decision would receive in the courts of the state in which it was rendered. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 85, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984). Res judicata applies if: (1) a final judgment on the merits was entered in the prior action; (2) there is identity of the parties or their privies in the two suits; and (3) there is identity of the causes of action in the two suits. *La Preferida v. Cerveceria Modelo*, 914 F.2d 900, 907 (7th Cir.1990).

Under this test, res judicata clearly does not apply in this case. Under Illinois law, a state court foreclosure judgment is not a final judg-

Under Illinois law, an obligor may be estopped from asserting defenses to an instrument against a holder of that instrument if: (1) the obligor made misrepresentations that induced reliance by the holder; (2) the obligor had either actual or implied knowledge that the representations were false when made; (3) the obligor intended or should have expected the holder to rely on the misrepresentation; (4) the holder in fact relied on the misrepresentation without knowledge of or without reasonable means of knowing the true facts; and (5) the holder would be prejudiced if the obligor is allowed to deny the contract. *Dressner Industries, Inc. v. Pyrrhus, A.G.*, 936 F.2d 921, 930 (7th Cir.1991); *UIDC Management, Inc. v. Sears, Roebuck and Company*, 167 Ill.App.3d 81, 85, 117 Ill.Dec. 813, 816, 520 N.E.2d 1164, 1167 (1st Dist. 1988).

Here, there is no genuine issue of material fact, and First Credit has clearly proven all of the elements of estoppel. First, both parties agree that the Debtor made misrepresentations which induced reliance. In the face of her complaints to Budget about the quality of its work (and in light of her current position), the Debtor's oral and written representations to First Credit expressly stating that she had no defenses against Budget which might impair the installment obligation were misrepresentations. *See* First Credit's Statement of Undisputed Material Facts at 3. First Credit clearly relied on those misrepresentations in purchasing Budget's claim against the Debtor. *See* Debtor's Response to First Credit's Motion for Summary Judgment at 14.

Second, it is clear that the Debtor knew that the representations she made to First Credit were untrue. She knew that she had complained to Budget about the quality of its work. *See* Debtor's Response to First Credit's Motion for Summary Judgment at 4. Thus, the Debtor had actual knowledge that the oral and written statements she made to First Credit were false.

Third, the Debtor should have expected First Credit to rely on her misrepresentations. The completion certificate contained a clause which, in large bold letters, expressly warned the Debtor not to sign unless Budget had completed the improvements to her satisfaction. In the face of such a clause, it was clearly reasonable for First Credit to rely on the Debtor's statements that she was satisfied with Budget's performance and had no defenses to the installment contract. *See Farmers & Merchants Bank v. Davis*, 151 Ill.App.3d 929, 939, 104 Ill.Dec. 850, 855–56, 503 N.E.2d 565, 570–71, *appeal denied*, 115 Ill.2d 540, 110 Ill.Dec. 455, 511 N.E.2d 427 (1987) (reasonable reliance sufficient to satisfy this element of estoppel); *Meier v. Aetna Life and Casualty Standard Fire Insurance Co.*, 149 Ill.App.3d 932, 938, 103 Ill.Dec. 25, 28, 500 N.E.2d 1096, 1099 (1986) (same).

Fourth, First Credit in fact relied on the misrepresentations without knowledge of or without reasonable means of knowing that the Debtor had defenses to the installment contract. It is clear that the Debtor did in fact rely on her misrepresentations in purchasing the assignment. *See* Debtor's Response to First Credit's Motion for Summary Judgment at 14.

The Debtor argues that First Credit had the time and the means to investigate whether Budget had failed to adequately perform the installment contract in any way, and was obligated to do so before purchasing the Debtor's loan from Budget. The court disagrees. The whole purpose of a satisfaction clause is to prevent assignees of these types of contracts from having to investigate whether the obligor has any defenses. Requiring such an investigation in every case would greatly increase the transactions costs of these assignments. If transactions costs of these assignments increase, two things could happen: (1) the costs could be passed on to the borrower; or (2) these assignments could become cost-prohibitive, in which case debtors may find financing unavailable, since contractors of-

---

ment on the merits of an action absent an express finding pursuant to Illinois Supreme Court Rule 304(a). *Chapman*, 132 B.R. at 148. Since the state court made no such finding in this case, First Credit's state court foreclosure judgment was not a final judgment. Thus, the Debtor is not barred by res judicata from bringing this cause of action.

ten agree to finance construction costs only because they can readily sell the installment contracts to more permanent lenders.[3] Because the vast majority of people must finance extensive repairs such as those done in this case, requiring an investigation of the type the Debtor seeks to impose on the purchaser of the loan would have a deleterious effect on the vast majority of people, in terms of both cost and availability of financing. Use of and reliance on a satisfaction clause to circumvent these investigations seems to the court a sensible and efficient way to keep this type of financing inexpensive and available. Thus, the court finds First Credit's use of and reliance on the satisfaction clause imminently reasonable.

Finally, it is obvious (and both parties agree) that First Credit would be prejudiced if the Debtor is allowed to assert any defenses to the contract against First Credit.

Thus, there is no genuine issue of material fact as to any of the elements of estoppel in this case: First Credit has clearly proved that the Debtor should be estopped from asserting any defenses against it. First Credit is entitled to judgment as a matter of law.[4] Thus, First Credit's motion for summary judgment is granted.[5]

## II. Budget's Motion to Strike and for Judgment on the Pleadings

Since this court is unable to determine the threshold issue of jurisdiction, this court expresses no opinion on the merits of Budget's motion to strike and for judgment on the pleadings. Rather, this court orders Budget and the Debtor to submit briefs on the jurisdictional issues previously posed in this opinion.

## III. The Motion of Budget and Mr. Schneider to Dismiss Count II of First Credit's Cross Claim

As this court has previously stated, this court has serious constitutional doubts about whether it has pendent jurisdiction over First Credit's cross claim and the motion to dismiss Count II of that cross claim. See, generally, In re Pettibone Corp., 135 B.R. 847 (Bankr.N.D.Ill.1992). As a practical matter, however, the jurisdictional issue need not be decided. Obviously, if First Credit is not liable to the Debtor, First Credit has no cause of action against Budget or Mr. Schneider, since it has not been injured. This court thus expects that First Credit will voluntarily withdraw its cross claim.

## CONCLUSION

For the reasons stated above, the court grants First Credit's motion for summary judgment on all remaining counts affecting it. In connection with Budget's motion to strike and for judgment on the pleadings, the court orders the Debtor and Budget to submit briefs on the jurisdictional issues

---

**3.** Indeed, it appears that, in this case, Budget would not, indeed could not, have agreed to perform under an installment contract had it not been reasonably sure it could locate an assignee to purchase the installment contract.

**4.** First Credit claims that the Debtor may not assert any personal defenses against First Credit, since First Credit is a holder in due course protected against all personal defenses. See Ill. Rev.Stat. 26 ¶ 3–302. An argument can be made, however, that First Credit is estopped from claiming the protection of holder in due course status because of a provision in the contact which states:

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT THEREON OR WITH THE PROCEEDS

HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
(emphasis in original).

Because the court rules that the Debtor is estopped from asserting any defenses to the contract against First Credit, the court need not decide whether First Credit is protected against the Debtor's personal defenses as a holder in due course.

**5.** In her response brief, the Debtor raised several bases of defense to the installment contract that First Credit argues were not pled in the complaint and thus should be stricken. Under the liberalized pleading rules now in effect, see 2A James W. Moore, MOORE'S FEDERAL PRACTICE, ¶ 56.02[3] at 8–8.1–9 (2d ed. 1991), these bases of defense were properly pled. However, they are wholly irrelevant.

previously posed in this opinion. The Debtor is to comply with Fed.R.Bank.P. 7008(a) on or before October 14, 1992, and, should she choose to do so, submit a brief in support of her position on that date. Budget is to comply with Fed.R.Bankr.P. 7012(b) on or before October 21, 1992, and may submit a brief in support of its position on or before such date. The court takes no immediate action with respect to First Credit's cross claim.[6] This motion is set for status and possible ruling on November 18, 1992.

---

**6.** Subsequent to this court's decision, First Credit, while stating for the record that it believed it was injured by Budget, voluntarily withdrew its cross claim. The voluntary dismissal was without prejudice.