Deborah J. ANETSBERGER, Margaret H. Lepine and Joseph A. Ryan, Plaintiffs–Appellants,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant–Appellee.

No. 93–1852.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 1, 1993.

Decided Jan. 28, 1994.

Robert A. Habib, Chicago, IL (argued), for plaintiffs-appellants.

Cornelia Dude (argued), Alvin Pasternak, Metropolitan Life Ins. Co., Law Dept., New York City, for defendant-appellee.

Before POSNER, Chief Judge, HARLINGTON WOOD, Jr., and MANION, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiffs-appellants Deborah J. Anetsberger, Margaret H. Lepine, and Joseph A. Ryan appeal the district court's entry of summary judgment against them on all counts of their complaint against defendant-appellee Metropolitan Life Insurance Company ("Metropolitan").

## I. BACKGROUND

Plaintiffs sue Metropolitan based on a Receipt and Temporary Insurance Agreement ("Receipt") allegedly issued to their father, Joseph Ryan, Sr. ("Ryan, Sr."), now deceased. On the policy Ryan, Sr. had listed the plaintiffs as the beneficiaries. The complaint alleges that plaintiffs are entitled to the life insurance proceeds under terms of the Receipt.

In September, 1991, Ryan, Sr. was sixty-three years old and suffering from emphysema. His wife had recently passed away and he received his medical coverage under her medical policy. Following her death, terms of the medical policy allowed Ryan, Sr. to extend the policy under a COBRA[1] plan for a limited period of time. Because of Ryan, Sr.'s age and illness, Ryan, Sr.'s children expected their father's medical costs to be high. For these reasons, Ryan, Sr.'s children decided to seek some form of life insurance for their father.

On September 13, 1991, Ryan, Sr. and his adult children, Deborah Anetsberger, Margaret H. LePine, and Joseph A. Ryan, met with John Morreale, an insurance agent of Metropolitan, for the purpose of obtaining life insurance on the life of Ryan, Sr. Everyone present knew of Ryan, Sr.'s emphysema and poor health. During this meeting, Morreale completed an application form for a term insurance policy in the amount of $100,000 on behalf of Ryan, Sr. Deborah Anetsberger paid the first month premium of $107.00 on behalf of her father. Metropolitan subsequently cashed and deposited this check. As a matter of convenience, the parties agreed that Morreale would contact Deborah Anetsberger regarding any future questions on the policy.

On the subject of when policy coverage would begin, Morreale told the plaintiffs that coverage would go into effect after Morreale signed the application and collected the first

---

1. The Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. §§ 1161–1168 (1988), an amendment to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., requires private employers who sponsor group health insurance plans to offer self-paid continued group coverage to qualified beneficiaries for at least eighteen months after a "qualifying event" and

month's premium.[2] After making this statement, Morreale handed Ryan, Sr. the Receipt. Morreale did not inform plaintiffs or Ryan, Sr. that a medical examination would be required and did not say he was waiving any provisions of the Receipt.

At the top of the first page of the Receipt, in a paragraph set off by different margins and in heavier type, Metropolitan stated:

**Please read both sides of this Receipt carefully. The Information It contains is Important to you. The maximum amount of coverage under this and all other receipts will not be more than $500,000 for any person to be insured. The maximum period of coverage under this Receipt is 90 days. If a medical examination is required, no coverage [except for accidental death] will be provided until the examination has been completed.**

Immediately below this paragraph the Receipt described the terms under which temporary insurance would take effect. Terms of the policy stated in relevant part:

**Eligibility for Temporary Insurance–** Metropolitan will grant Temporary Insurance to each person to be insured if at least one month's premium is received on the date of the application and there is no material misrepresentation in the application.

**When Temporary Insurance Starts–** Coverage starts on the date of this Receipt. But, if a medical examination of a person to be insured is initially required by our underwriting rules, coverage on that person will not start until completion of the examination. If it is not completed within 90 days from the date of this Receipt, there will be no coverage. However, if a person to be insured dies from an accident within 30 days from the date of this Receipt and before the examination is completed, Temporary Insurance will be in effect if it has not already ended under the terms of this Receipt.

At the top of page two, the Receipt described when temporary insurance ends and limitations on the authority of the insurance agent:

**When Temporary Insurance Ends—**Temporary Insurance on any person will end on the earliest of the following:

1. When coverage starts under a Metropolitan policy.
2. When Metropolitan's first offer to issue a policy is not accepted.
3. When Metropolitan offers to refund the amount received.
4. Five days after Metropolitan mails, to the address on the application, a notice that the application has been declined.
5. The date the person to be insured or the applicant learns that the application has been declined.
6. Ninety days from the date of this Receipt.

If no Metropolitan policy takes effect, the amount received will be refunded when Temporary Insurance ends.

**Limitations on Authority—**No one but the President, the Secretary or Vice–President of Metropolitan may change or waive the terms of this Receipt.

Although some of the above quoted language was set off by different margins or bold print as identified above, all of the language appeared in standard type size.

Morreale handed the Receipt containing this language to Ryan, Sr. on September 13, 1991 who then placed it on a table in his home. The record contains no evidence indicating that Ryan, Sr. read the receipt or knew of its contents. Deborah Anetsberger did not read the Receipt until after her father died.

Morreale met with Deborah Anetsberger on or about September 21, 1991, to discuss a

---

notice to the employee. A "qualifying event" includes termination of employment or disability.

**2.** Plaintiffs assert that Morreale told them "If your father died right now, you would get $100,-000." There is no evidence in the record that supports this statement. During Morreale's deposition, Morreale was asked whether he made this statement to Deborah Anetsberger or Margaret LePine, to which he responded, "I don't remember." However, in his deposition Morreale admitted that he told the plaintiffs that the policy was in effect as of September 13, the day the application was completed. Morreale dep. at 20.

policy that Anetsberger was interested in taking out on her own life. At this time Morreale informed her that Metropolitan underwriting rules required a medical examination on her father before Metropolitan would issue the policy. He did not make any statement regarding whether temporary insurance was in effect.

On or about September 23, 1991, Anetsberger made an appointment for her father to undergo a physical. On the day the physical was scheduled, September 30, 1991, Ryan, Sr. died of a heart attack before the physical was completed.

Four days later, on October 4, 1991, Metropolitan denied Ryan, Sr.'s application on the grounds that the medical examination was not completed. In response, by an October 15, 1991 letter, plaintiffs claimed the benefits under the alleged policy. Metropolitan rejected this claim on November 22, 1991, and returned the initial deposit of $107.00 to the plaintiffs on December 4, 1991.

Plaintiffs filed the three count complaint in this matter on March 23, 1992 in the Circuit Court of Cook County. The defendant then removed the case to the United States District Court for the Northern District of Illinois. Count I alleges that Metropolitan is in breach of the Receipt and Temporary Agreement by refusing to pay the policy proceeds. Count II alleges that Metropolitan is estopped from denying coverage based on the lack of a medical examination because plaintiffs relied on Morreale's representation that policy coverage began when the application was completed and the first month's premium paid. Count III seeks statutory penalties under Illinois law for Metropolitan's vexatious and unreasonable delay in paying the

proceeds due under the policy. The district court granted summary judgment on all counts in favor of the defendant holding "that the plain, ordinary, and popular meaning of the words used in the Receipt unambiguously assert that Ryan, Sr.'s temporary coverage would begin only after he had completed his scheduled medical examination." The district court also rejected plaintiffs' estoppel argument and claim for statutory penalties under 215 ILCS 5/155 (1993). This appeal followed.

## II. ANALYSIS

■ We review the grant of summary judgment *de novo, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and view the facts and all reasonable inferences drawn from it in the light most favorable to the nonmoving party. *Brookins v. Kolb,* 990 F.2d 308, 312 (7th Cir.1993); *Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 663 (7th Cir.1992).[3] We will affirm summary judgment if the record presents "no genuine issue of material fact [such] that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.

Plaintiffs first argue that the district court disregarded the intent of the parties and the ambiguities inherent in the Receipt when it held that temporary insurance never took effect. The second line of argument focuses on the scope of Morreale's authority when working as an agent of Metropolitan and his ability to waive provisions contained in the Receipt.

---

3. Defendant raises the question of whether the plaintiffs have properly preserved portions of the record on appeal. Specifically, defendant complains that plaintiffs failed to file the depositions of Deborah Anetsberger and John Morreale with the district court and, thus, we should ignore any facts contained in their briefs that are not supported by other documents properly submitted to the district court.

Both parties filed excerpts of these two depositions with the district court as attachments to their briefs. Plaintiffs also submitted courtesy copies of the depositions, but did not file them. When plaintiffs discovered on appeal that the depositions had not been included in the appel-

late record, they went before Judge Kocoras asking for the depositions to be included in the appellate record. Judge Kocoras granted this motion based on the argument that his memorandum opinion included facts contained in these depositions that had not been submitted as attachments to the summary judgment briefs. This order was proper under Fed.R.App.P. 10(e), and we review only those facts considered by the district court in rendering its judgment. Any objection that the district court improperly relied on facts not in the record has been waived.

Further, there is no claim that the excerpts from the depositions are inaccurate.

## A. INTERPRETATION OF THE RECEIPT AND TEMPORARY INSURANCE AGREEMENT

■ Plaintiffs maintain that the district court should have liberally construed the Receipt's language to find that temporary insurance began on September 13, 1991. Such an interpretation, plaintiffs contend, is consistent with the intentions of the parties.

■ For the substantive legal rules applicable to this diversity action, we look to Illinois law. *Erie v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Illinois law provides that an insurance policy should be applied as written if the words used in the policy can reasonably be given their plain, ordinary, and popular meaning. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 74, 161 Ill.Dec. 280, 284, 578 N.E.2d 926, 930 (1991); *Garde v. American Family Life Ins. Co.*, 147 Ill.App.3d 1034, 1037, 101 Ill.Dec. 110, 112, 498 N.E.2d 292, 294 (4th Dist.1986).[4] When interpreting an insurance policy, a court is to construe any ambiguous language strictly against the insurer and in favor of coverage. *Insurance Corp. of Ireland, Ltd. v. Board of Trustees of S. Ill. Univ.*, 937 F.2d 331, 336 (7th Cir.1991); *Western Casualty & Surety Co. v. Brochu*, 105 Ill.2d 486, 495, 86 Ill.Dec. 493, 497, 475 N.E.2d 872, 876 (1985). Thus the issue presented for our review is whether any of the language contained in the Receipt is ambiguous.[5]

■ Determining whether an insurance policy is ambiguous presents a question of law for the court. *State Security Ins. Co. v. Burgos*, 145 Ill.2d 423, 439, 164 Ill.Dec. 631, 638, 583 N.E.2d 547, 554 (1991); *Putzbach v. Allstate Ins. Co.*, 143 Ill.App.3d 1077, 1080, 98 Ill.Dec. 265, 268, 494 N.E.2d 192, 195 (2d Dist.1986). Policy language is ambiguous if it is subject to more than one reasonable interpretation. *State Security Ins.*, 145 Ill.2d at 439, 164 Ill.Dec. at 638–39, 583 N.E.2d at 554–55. Under this standard plaintiffs suggest that the language of the Receipt is unclear and should be interpreted in favor of the insured and for a finding of coverage.

Plaintiffs focus their argument on the use of only one word, "initially." Plaintiffs complain that the use of "initially" in the third full paragraph on page one of the Receipt is ambiguous because it confuses the average person as to when temporary insurance begins. The relevant sentence states: **"When Temporary Insurance Starts**—Coverage starts on the date of this Receipt. But if a medical examination of a person to be insured is *initially* required by our underwriting rules, coverage on that person will not start until completion of the examination" (emphasis added). This term confuses an applicant, plaintiffs argue, because the dictionary defines the term as "at the beginning; at first." Webster's New World Dictionary 752 (College ed. 1962). Because Morreale did not mention that Ryan, Sr. would be required to undergo a medical examination on September 13, 1991, the date that the application process *began*, an applicant could

---

4. We recognize that the Receipt in issue is not an insurance policy, but Illinois law applies the principles concerning insurance policies to these types of binders or conditional receipts. *Garde*, 147 Ill.App.3d at 1038, 101 Ill.Dec. at 112, 498 N.E.2d at 294.

5. Cases involving the interpretation of conditional receipts and temporary insurance must be concerned with balancing the competing policies that underlie this area of law. On one hand the law seeks to protect the insured from being harmed as a result of ambiguities or misstatements contained in a policy drafted by the insurance company. On the other hand, courts must allow insurance companies to protect themselves from liability on uninsurable risks—risks that would be screened out during the underwriting process. This concern is particularly apparent as applied to life insurance where the insurer

may be bound to the contract until maturity with no right to cancel or refuse to renew. *See* 12A John A. Appleman, Insurance Law and Practice § 7237 (1981). One method of balancing these competing policies is by holding insurers to a clear notice requirement. In those cases that find in favor of insurers, Illinois courts demand that the insurer set forth in plain and ordinary language the provisions of the policy such that a lay person can understand terms of the agreement. *See, e.g., Armstrong v. United Ins. Co.*, 98 Ill.App.3d 1132, 1143–44, 54 Ill.Dec. 313, 321, 424 N.E.2d 1216, 1224 (1st Dist.1981) ("[T]he purpose of conditional receipts ... is to guarantee the applicant at least temporary coverage limited only by expressly communicated conditions...."); *Garde*, 147 Ill.App.3d at 1038, 101 Ill.Dec. at 112–13, 498 N.E.2d at 294–95.

be confused as to when temporary insurance begins.

■ As defendant correctly points out, Illinois law requires that provisions of an insurance agreement be interpreted in the factual context of the case. *Putzbach*, 143 Ill. App.3d at 1081, 98 Ill.Dec. at 267, 494 N.E.2d at 194 (2d Dist.1986). When read in the context of the entire document, the use of this term is unambiguous. The language used in the Receipt clearly and plainly describes when, and under what circumstances, temporary insurance would take effect. In the very first paragraph, above the sentence containing the word "initially," the Receipt refers to the possibility of a medical examination requirement: **"Please read both sides of this Receipt carefully. The information it contains is important to you. . . . If a medical examination is required, no coverage [except for accidental death] will be provided."** Two paragraphs below on the same page, the Receipt further explains when temporary insurance begins: **"When Temporary Insurance Starts**—Coverage starts on the date of this Receipt. But if a medical examination of a person to be insured is initially required by our underwriting rules, coverage on that person will not start until completion of the examination." These sentences make it sufficiently clear to an applicant that if the company's underwriting rules require a person to obtain a physical, temporary insurance is not in effect beyond coverage for accidental death. As used in this sentence, "initially" refers to "our underwriting rules." This reference indicates to the applicant that there are standards or guidelines that may be applicable to the application which the agent has not mentioned. This sentence does not refer to the agent or the agent's knowledge of underwriting rules. Below the above quoted sentences, for those consumers unfamiliar with underwriting, the Receipt explains how the underwriting and application processes work: **"The Underwriting Process**— . . . We will evaluate your application to see if you are eligible for insurance coverage. We will first review all of the information contained in your application. We may confirm or add to this information in the ways described in this notice." In the next section entitled **"Infor-**mation Collection,"** Metropolitan specifically warns that they may "[a]sk [the applicant] to have a medical examination." These provisions warned Ryan, Sr. that Metropolitan may ask him to complete a medical examination before a life insurance policy would be issued.

On September 13, 1991, Morreale handed Ryan, Sr. the Receipt containing the above quoted language. Although there is no evidence that Ryan, Sr. or plaintiffs actually read the Receipt, the Receipt adequately notified them that temporary insurance would not take effect if Ryan, Sr. was required to undergo a medical exam.

Because we find that the Receipt's language plainly and sufficiently warned plaintiffs that temporary insurance would not begin until the medical exam was completed, we hold that under the facts of this case, particularly where it was known that a senior citizen had a serious ailment, temporary insurance never began beyond the coverage for accidental death. *See Fields v. Franklin Life Ins. Co.*, 115 Ill.App.3d 954, 71 Ill.Dec. 776, 451 N.E.2d 930 (5th Dist.1983).

## B. AUTHORITY TO WAIVE PROVISIONS OF THE POLICY

The second challenge raised by plaintiffs focuses on whether Morreale's statements to Ryan, Sr. and plaintiffs constituted a waiver of provisions of the Receipt. Morreale told plaintiffs that temporary insurance was in effect on September 13, 1991 and at the same time handed Ryan, Sr. the Receipt. Plaintiffs contend that this statement bound Metropolitan. While count II of the complaint phrases this issue in terms of estoppel, we understand this assertion to imply that Morreale's statement waived the provisions of the Receipt on behalf of Metropolitan. However, we address both issues below. We also review the agency issues implied by these arguments for "[a] waiver of the terms and provisions of a policy can only be made, or estoppel created, by a duly authorized representative while acting within the scope of his authority." 16C Appleman § 9122 at 55. Even though we view the facts of this case in

the light most favorable to the plaintiffs, we resolve these issues in favor of the defendant.

### 1. Estoppel

Plaintiffs maintain that the district court erred by holding that plaintiffs could not have reasonably relied on the representations of the agent. "Reasonable reliance" is the fourth element for a claim of estoppel under Illinois law. To estop defendants from denying coverage, plaintiffs must show the following elements: (1) words or conduct by Metropolitan, through its agent, Morreale, amounting to a misrepresentation or concealment of material facts; (2) Metropolitan had knowledge, either actual or implied, that the representations were untrue at the time made; (3) Metropolitan intended for plaintiffs to rely on the misstatements; (4) Plaintiffs relied on the misrepresentations without knowledge or reasonable means of knowing the true facts; and (5) Plaintiffs would be prejudiced if Metropolitan is permitted to deny the truth of their misrepresentations. *Dresser Industries, Inc. v. Pyrrhus AG*, 936 F.2d 921, 930 (7th Cir.1991); *UIDC Management, Inc. v. Sears, Roebuck & Co.*, 167 Ill.App.3d 81, 85, 117 Ill.Dec. 813, 816, 520 N.E.2d 1164, 1167 (1st Dist.1988). While plaintiffs phrase their argument in terms of an objection to the district court's conclusion regarding count II of the complaint, they do not present any serious argument against this conclusion. Instead, plaintiffs argue that Morreale's statements on September 13, 1991, constituted a waiver of the medical examination requirement. We agree with the district court that plaintiffs have not alleged facts demonstrating that Ryan, Sr. relied upon Morreale's misrepresentation without knowledge or reasonable means of knowing the true facts,[6] and we affirm the district court's judgment as to count II and focus our attention on the waiver and agency issues.

### 2. Waiver

Whether the facts of this case are sufficient to constitute a waiver of the contractual provision is a question of law. *See Geier v. Hamer Enterprises, Inc.*, 226 Ill.App.3d 372, 390, 168 Ill.Dec. 311, 322, 589 N.E.2d 711, 722 (1st Dist.1992); *Whalen v. K–Mart Corp.*, 166 Ill.App.3d 339, 343, 116 Ill.Dec. 776, 779, 519 N.E.2d 991, 994 (1st Dist.), *appeal denied*, 121 Ill.2d 587, 122 Ill. Dec. 448, 526 N.E.2d 841 (1988). In order to waive a requirement of an insurance contract, the insurer must intentionally relinquish a known right. *Western Casualty & Surety Co. v. Brochu*, 105 Ill.2d 486, 498, 86 Ill.Dec. 493, 499–500, 475 N.E.2d 872, 878–79 (1985); *Florsheim v. Travelers Indem. Co.*, 75 Ill.App.3d 298, 304, 30 Ill.Dec. 876, 882, 393 N.E.2d 1223, 1229 (1st Dist.1979). "A waiver may be expressed or implied, arising from acts, words, conduct, or knowledge of the insurer. It is unilateral, as no act of the insured is necessary to complete it." *Western Casualty*, 105 Ill.2d at 498, 86 Ill.Dec. at 499, 475 N.E.2d at 878 (1985). For an insurer to expressly or impliedly waive a provision of an insurance agreement, its actions, words, knowledge, or conduct "must be inconsistent with the intention to rely on the requirements of the policy." *Ames v. Crown Life Ins. Co.*, 85 Ill.App.3d 203, 204–05, 40 Ill.Dec. 521, 523, 406 N.E.2d 222, 224 (3d Dist.1980). *See also Mulholland v. State Farm Mutual*

---

**6.** The district court stated: "Plaintiffs possessed a reasonable means of knowing that Ryan could be required to undergo a medical examination before coverage would begin. First, the Receipt specifically warned Ryan that coverage may not commence upon the date of the Receipt if Metropolitan's underwriting standards required him to obtain a medical examination. Second, the Receipt said that Metropolitan's agents were prohibited from waiving any of the terms of the Receipt. Morreale, although alleged to have told Ryan his coverage commenced immediately, is not alleged to have informed Ryan that he was waiving a condition of the Receipt, or that Ryan would not be required to obtain a medical examination. It is questionable that Ryan, a sixty year-old man who had been suffering for years from emphysema, could reasonably assume that he possessed immediate coverage without having to undergo a medical examination. Finally, even if *before* he was notified to schedule such an appointment Ryan did not have knowledge or a reasonable means of knowing that his coverage would not commence prior to his obtaining a medical examination, he certainly possessed such a reasonable means of knowing *after* Metropolitan asked him to schedule one. This notification by Metropolitan, in combination with the clear terms of the Receipt, would vitiate any reasonable belief that Ryan may have possessed that he [was] immediately covered under the Receipt."

*Auto. Ins. Co.*, 171 Ill.App.3d 600, 609–10, 122 Ill.Dec. 657, 662–63, 527 N.E.2d 29, 34–35 (5th Dist.1988). Plaintiffs do not argue that Metropolitan expressly waived these provisions so we address only the implied waiver issue.

■ Plaintiffs heavily rely on Morreale's statement to them on September 13, 1991, that insurance coverage was in effect. At the same time that Morreale made this statement, he handed Ryan, Sr. the Receipt containing the language at issue in this case. For plaintiffs to maintain their implied waiver argument, they must demonstrate that Morreale's statement impliedly waived both the medical examination requirement and the nonwaiver clause.

Examining these facts from plaintiffs' perspective, at the time of the September 13, 1991 meeting, everyone present knew of Ryan, Sr.'s health problems. During the meeting Morreale discussed the application procedure, stated that temporary insurance began that day, and handed Ryan, Sr. the Receipt containing the two clauses at issue. One clause warned that temporary insurance would not take effect beyond accidental death coverage until the medical examination, if required by the underwriting rules, was completed. The second clause warned plaintiffs that Morreale did not have authority to waive requirements of the Receipt, including the medical examination requirement. As we held above, the language contained in the receipt was unambiguous.

The policy was in effect even without a medical examination in the event of accidental death prior to the medical exam. Approximately eight to ten days later, when Morreale telephoned Deborah Anetsberger to inform her that her father was required to undergo a physical examination before the policy would be issued, plaintiffs were again notified that Metropolitan was enforcing the medical exam provision. Metropolitan did not lull plaintiffs into a false sense of security by taking an unusually long time to review the application for the purposes of determining whether a medical exam was required. *See Whalen,* 166 Ill.App.3d at 343, 116 Ill. Dec. at 779, 519 N.E.2d at 994. Further, neither Ryan, Sr. nor plaintiffs objected to this customary requirement. Taken as a

whole, the statements and actions by Metropolitan, through its agent Morreale, were not inconsistent with the intention to rely on provisions of the policy. *See Florsheim,* 75 Ill.App.3d at 304, 30 Ill.Dec. at 882, 393 N.E.2d at 1229. Accordingly, we hold that Metropolitan did not intentionally waive any provisions of the Agreement.

But even if we were to conclude that a jury could find that Morreale's statements waived provisions of the policy, plaintiffs have pleaded no facts showing that Morreale had the authority to do so.

### 3. Agency

■ A question presented by plaintiffs' waiver and estoppel arguments, though not separately addressed by the parties' briefs, is whether Morreale's statement bound Metropolitan. To bind the principal, the agent must have either actual authority, apparent authority, or the principal must ratify Morreale's actions. *See* 16C Appleman § 9122 at 56. "The existence and scope of an agency relationship are questions of fact, unless the parties' relationship is so clear as to be undisputed." *Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.,* 218 Ill.App.3d 383, 394, 160 Ill.Dec. 773, 781, 577 N.E.2d 1344, 1352 (1st Dist.1991), *citing Northern Trust v. Saint Francis Hospital,* 168 Ill.App.3d 270, 276, 119 Ill.Dec. 37, 41, 522 N.E.2d 699, 703 (1st Dist.1988). Based on the facts contained in the record, we find that none of these forms have been shown here.

■ To demonstrate actual authority, the plaintiff must present evidence showing that an insurance agent should be treated as a general agent with the power to bind the principal, and this must be beyond the mere testimony of the agent. *C.L. Maddox, Inc. v. Royal Ins. Co.,* 208 Ill.App.3d 1042, 1047, 153 Ill.Dec. 791, 794, 567 N.E.2d 749, 752 (5th Dist.1991); *Sommerio v. Prudential Ins. Co.,* 289 Ill.App. 520, 7 N.E.2d 631 (1st Dist.1937); 22 Illinois Law and Practice § 72, at 107 (1956). *See also Weil,* 218 Ill.App.3d at 390, 160 Ill.Dec. at 779, 577 N.E.2d at 1350. To survive a motion for summary judgment, the nonmovant must produce proper documentary evidence to support his contentions, i.e.,

identify a genuine issue of material fact such that a reasonable jury could find for the nonmovant. *Whetstine v. Gates Rubber Co.*, 895 F.2d 388, 392 (7th Cir.1990). The only evidence contained in the record concerning Morreale's authority is his deposition testimony that he was a general agent of Metropolitan. By itself, this evidence is insufficient to demonstrate that Morreale had actual authority to bind Metropolitan by his representations. Plaintiffs offer no other evidence indicating that Morreale had actual authority to bind Metropolitan by his representations, so we concern ourselves only with whether apparent authority exists under the facts of this case.[7]

■■■ Apparent authority may exist when a principal, by words or conduct, holds out an agent as possessing certain authority and thereby inducing others to believe that authority exists. *Lynch v. Board of Educ. of Collinsville Community Unit Dist. No. 10*, 82 Ill.2d 415, 426, 45 Ill.Dec. 96, 104–05, 412 N.E.2d 447, 455–56 (1980). While Metropolitan did send its agent to sell insurance, it tried to indicate to potential customers that Morreale had only limited authority. The record establishes that Metropolitan did not hold Morreale out as having the authority to waive requirements in the Receipt. The Receipt specifically states **"Limitations on Authority—No one but the President, the Secretary or Vice–President of Metropolitan may change or waive the terms of this Receipt."** Also, Metropolitan later informed plaintiffs, through Morreale, that a medical examination was required by the underwriting rules before a policy could be issued. These facts clearly demonstrate that Metropolitan did not acquiesce in the agent's alleged waiver of the clauses in issue. Therefore we hold that plaintiffs have failed to establish that there are contested facts on whether Morreale had the authority to waive

provisions of the Receipt and that the district court properly granted summary judgment in favor of Metropolitan on Count II of the complaint.

Such a result makes sense. It is hard to imagine a scenario whereby an agent of the company could simply waive any provision contained in the Receipt/Temporary Insurance Agreement and bind the insurance company to a totally uninsurable risk. This is one reason why the theory of apparent authority requires the principal to actively hold the agent out as having the authority to bind the principal when in fact actual authority does not exist.

■■■ Rather than addressing the authority issues directly, plaintiffs argue that Morreale was a general agent of Metropolitan who, under Illinois law, could waive any part of the policy. "General agent" is a term used loosely and sometimes carelessly when discussing the authority of insurance agents. *See* 16 Appleman § 8691. Some Illinois cases, while adhering to the proposition that agency law applies to the creation of insurance contracts, recognize two general types of insurance agents: general agents and soliciting agents. The key difference between these two categories is that a waiver or estoppel claim may result from the acts, conduct, or statements of a general agent, but a "mere soliciting agent generally has no authority to waive conditions of the policy." 22 Illinois Law and Practice §§ 354–355.[8] Because of this difference in powers, Morreale's ability to waive the two provisions hinges on him being classified as a general agent. "[A] general agent is one who has *actual* authority to bind an insurer by his creation of a contract of insurance; it cannot rest upon implied, apparent, or ostensible authority." 12A Appleman § 7242, at 241 (emphasis added). Here plaintiffs rely on Morreale's testi-

---

7. We do not address the issue of ratification because the issue has not been raised by the appellants.

8. A soliciting agent has considerably fewer powers and generally "has authority only to solicit insurance, submit applications therefore to the company, and perform such acts as are incident to that power. While a soliciting agent may bind the company by agreements and representations

properly made in connection with the application for insurance, ordinarily he has no authority to bind it by attempted acts or contracts in its behalf, relating not to the taking of the application, but to the subsequent contract of insurance." 22 Illinois Law and Practice § 73 at 113 (1956). For a soliciting agent's actions to constitute a waiver by the principal, apparent authority must be established.

mony that he was a general agent. However, the mere statement by an agent that he is a general agent does not amount to the legal conclusion that he was a general agent. For plaintiffs to establish that Morreale was a general agent of Metropolitan, they must show he had *actual* authority to do so. As discussed above, the record is void of any evidence of actual authority, and thus Morreale has not been shown to be a general agent.

Plaintiffs cite *Zannini v. Reliance Ins. Co.*, 147 Ill.2d 437, 168 Ill.Dec. 820, 590 N.E.2d 457 (1992), and *Armstrong v. United Ins. Co.*, 98 Ill.App.3d 1132, 54 Ill.Dec. 313, 424 N.E.2d 1216 (1st Dist.1981), in support of their argument that Morreale's statements bound Metropolitan. Both cases, however, are clearly distinguishable from the instant case.

In *Zannini*, the court found express authority existed as evidenced by the agency-company agreement and there were no expressed limitations as to his authority. Because there is no evidence of such express authority in this case, *Zannini* does not apply. Similarly, *Armstrong* involved an agent who had actual authority to bind the principal by issuing a conditional receipt. The conditional receipt contained no language indicating a need for a medical examination or that the agent did not have the authority to waive the medical examination requirement. *Armstrong*, 98 Ill.App.3d at 1142–43, 54 Ill. Dec. at 320–21, 424 N.E.2d at 1223–24. Both *Zannini* and *Armstrong* stand in stark contrast to this case where the Receipt explicitly notified the applicant that the insured may be required to undergo a medical examination and there is no evidence showing that the insurance agent had no authority to waive its provisions.[9]

Because plaintiffs present no argument regarding the third count of the complaint alleging that Metropolitan vexatiously and unreasonably delayed paying the plaintiffs' claims and seeking statutory penalties under 215 ILCS 5/155 (1993), we affirm the district

court's grant of summary judgment as to Count III.

For the reasons stated, the district court's order granting defendant summary judgment on all counts of the complaint is

AFFIRMED.

---

**9.** Assuming that the temporary insurance did take effect, the Anetsbergers next argue that the temporary insurance never ended under any of the six methods listed in the policy receipt. Be-

cause we conclude, for the reasons stated above, that temporary insurance never began, we do not reach this part of the analysis.